James Stewart **BETTIS** and Robert Edward Nelson, III, Appellants,

v.

**UNITED STATES** of America, Appellee.

Nos. 22532, 22532–A.

United States Court of Appeals Ninth Circuit.

Jan. 30, 1969.

Rehearing Denied in No. 22532, Feb. 27, 1969.

---

J. Emery Barker, Tucson, Ariz. (argued), for appellant Bettis.

Arthur R. Buller, Tucson, Ariz. (argued), for appellant Nelson.

Philip S. Malinsky (argued), Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Tucson, Ariz., for appellee.

Before JOHNSEN *, BARNES and DUNIWAY, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellants were convicted on a joint charge of bringing 22 pounds of marihuana into the United States from Mexico in violation of 21 U.S.C. § 176a. We affirm as to appellant Bettis, but reverse as to appellant Nelson.

The marihuana was discovered by customs officers in a routine search of an automobile at the port of entry at Nogales, Arizona, where the car had crossed the border. Bettis was driving and Nelson was riding in the car. Thirteen foil-wrapped packages of marihuana were found under the back seat and the rest in loose form in a gunnysack inside a sleeping bag in the trunk of the car. Both Bettis and Nelson claimed to have no knowledge of the presence of the marihuana.

Bettis had set out from Mazatlan, Mexico, on the day before, purportedly headed for Los Angeles, California, with Nelson and two other youths riding along in the car. None of the three passengers is shown to have had a personal associationship with Bettis at Mazatlan prior to the making of the riding arrangements. All four had however been staying at the beach there, in one of those casual accumulations which seem to spring up among the youth of today. There was available to them at Mazatlan for sleeping purposes "grass sideless houses" and the floor of a "palopa" which they also were permitted to use free.

Bettis had been at Mazatlan about a month, having driven there from Washington, D. C. Nelson had been there about two weeks, having come down from San Francisco, where he was employed in a lithography plant. He claimed to have been riding back with Bettis merely as a means of returning to his job. He testified that he had checked the day before on the cost of air transportation from Mazatlan; found that he did not have enough money left for such fare; was offered the opportunity to ride with Bettis; and chose to do so instead of taking a bus because this would enable him to get back to his job, where he was due, sooner than by bus trip.

The other two occupants of the car are identified in the record as a Craig Hardy, who apparently was from California, and a youth referred to as Steve

* Harvey M. Johnsen, Senior Circuit Judge of the Eighth Circuit, sitting by designation.

(no one seemed to know his last name), who apparently was from Arizona. (Nelson testified that he had been unable to locate the whereabouts of either Hardy or Steve.) In such general contacts as had existed among the group at the beach, they appear to have not had much concern about each other's last name. Illustratively, a woman whose name was Mrs. Smith was primarily referred to in the testimony as Cecile. Her testimony similarly was reflective of the indifference on the part of the group to the others' permanent identification. Thus, when she was asked a question in regard to Nelson, she stated that she had not known him by that name.

Mrs. Smith was the mother of four young children which she had with her; she had been at the beach during all of the time that Bettis was there and for a month thereafter; she gave testimony for Bettis, which was taken in deposition form because she was expecting at the time of the trial—some 7½ months after the border event—to give birth shortly to another child.

She seems to have been sort of a hub in the doings and concerns of the members of the group. According to the record, she had on two occasions loaned some money to Bettis; she permitted her car to be used as a depository for the sleeping bags and bed rolls of the members of the group; she helped to feed some of them at various times; it was she who had arranged with Bettis for Nelson, as well as for Hardy and Steve, to ride along in the car (she said she introduced Nelson to Bettis the day before the departure); and she had stood around, said she, observing the loading of Bettis' car on the day of the departure. The purpose of this latter testimony was, of course, to show that she had seen no marihuana put into the car or indication of the presence of any, which she was certain she would have detected if this had been the situation.

We do not deem it necessary to set out all the details gone into on the trial as to the somewhat enigmatic situation involved. A few have been given to indicate the general picture and some others will be recounted in contextual incidence. Bettis testified that he was going to California instead of back to Washington, D. C., because he was concerned about whether a friend of his named Simpson, who had gone with him to Mazatlan, had gotten into and was being cared for in the Veterans Hospital at Los Angeles. Simpson, a Vietnam veteran, had fallen off a cliff at Mazatlan and injured his back and had been taken to Los Angeles two days before by a young married couple who were driving a station wagon in which he could lie down.

Bettis had for several days been attempting to obtain some funds from the American Consul at Mazatlan with which to get his car out of the repair shop and leave Mexico. He finally was given $24.00. On the day of the departure, Bettis with Nelson accompanying him went to round up Steve so they could get under way. They both testified that they found Steve at the restaurant near the palopa; that he had some marihuana at the time and wanted Bettis to let him bring it along as far as thé border; that Bettis refused to do so; but that Bettis then agreed that Steve could use the car to drive into Mazatlan and give the marihuana to some friends of his.

While Bettis testified that only Steve had thus gone into Mazatlan, the record does not account for Bettis' own whereabouts during that period. It does indicate, however, without contradiction from Bettis or from any appearing circumstantial incident, that Nelson had had no part in such arrangements as were made between Bettis and Steve; that when he saw that their departure was going to be delayed, he left the scene and went down to the beach to get in some final surfing on a board which he had brought along with him to Mazatlan; and that he did not come back until after the car had returned to the restaurant area.

Nelson further testified that he saw no packages or other indication of the

presence of any marihuana and also to the effect that he had no reason to think that any was contained in the car but took it for granted that the marihuana which Steve had possessed had been duly disposed of in the manner which he had heard suggested. Further, the marihuana which was contained in the car was apparently of such dryness and character that it did not give off any odor. The customs officers testified that they had not detected any marihuana odor in the car nor was there anything about the sleeping bag which was indicative to them of the presence of marihuana. Thus, knowledge as a possible probative factor in the situation could hardly be argued to be imputable to Nelson upon the basis that the characterizing odor of marihuana necessarily must have made him aware of the presence thereof in the car.

There existed of course no question in the situation as to the marihuana involved having been illegally brought into the United States in Bettis' car and with his having control thereof. In his undisputed dominion of the car and its use, Bettis would have an apparent responsibility for the marihuana being thus brought across the border. In his right and power to have removed it from the car, he could legally be regarded as having an actual or a constructive possession of the marihuana in relation to the importation made.

■ On the probativeness which such possession was entitled to be accorded against him under the presumption of Section 176a, this would be "sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury". This legal probativeness could be given application regardless of whether Bettis' possession was actual or constructive in the situation. Quiles v. United States, 344 F.2d 490, 493 (9 Cir. 1965); McClure v. United States, 332 F.2d 19, 23 (9 Cir. 1964); Hernandez v. United States, 300 F.2d 114, 116–119 (9 Cir. 1962).

If the marihuana was Bettis', his possession of it in the car was actual. If he had no interest in the marihuana, he nevertheless was legally in constructive possession of it because of his undisputed dominion over the car and its contents and his right and power to have removed anything therefrom. Only, therefore, if he was without any interest in the marihuana, and if he further did not know that it was in the car, could he be said to have been without legal responsibility to have acted in relation to it before crossing the border. Thus, the minimum basis on which Bettis could contend that his conviction was probatively unsustainable would be that the evidence legally required it to be doubted that he even so much as knew of the presence of the marihuana.

The situation was not, in our opinion, one in which the trial court was required to so hold or the jury to so find. Indeed, the circumstances were such that we think the jury could properly resolve the question of Bettis' guilt upon a level higher than this—that he must have had an interest in the marihuana itself. On the record, the only alternative reasonably arguable against this being the situation was that the marihuana had to be regarded as having exclusively belonged to Steve. The effect of this would be to contend that it could only reasonably be believed that the marihuana consisted of that which Steve had possessed (more must, however, have been added thereto); that it had been Steve who had loaded the 22 pounds under the back seat and into the trunk of the car; and that this had been done so surreptitiously and overreachingly as to be without basis for any rational inference that Bettis could have had any part therein.

But there were aspects which the jury was entitled to weigh in considering whether that theory or possibility ought to be accepted by it. Thus, it was undisputed in the record that Steve had gotten out of the car at Navajoa, Mexico, removed his handbag of personal belongings therefrom, and left the others

at that point, with no expression or circumstance suggestive of an arrangement or implication that he was expecting to see or have contact with any of them again. (In contrast, the record shows that Hardy, the third passenger, had desired to pick up some Mexican items or souvenirs at Nogales, Mexico, and had arranged that Bettis and Nelson, who wanted to get something to eat, would wait for him at a restaurant up the street in Nogales, Arizona.)

The jury could reasonably regard it as so unusual as not to be probable that Steve would thus unexplainedly have seen fit to totally abandon—and not alone abandon but say nothing about—such a substantial supply of marihuana, if it had been his. Such action would be inconsistent with what Bettis claimed had been Steve's original plan and intention, to bring some marihuana along and take it with him when he left the others before they continued their journey across the border. He apparently adhered to his expressed intention of leaving the others while they were still inside Mexico. If he had been so set on bringing some marihuana along that he went the length of surreptitiously putting it in the car, it would hardly seem likely that he would not have asserted his right to the marihuana when he left the car in accordance with his original plan. His claiming of the marihuana at that time, if it were his, could hardly have evoked anything more from Bettis than an expression of anger or denunciation at having thus been imposed upon.

But to go even beyond this, if it were to be theorized that something might have occurred on the trip which had given him a grudge against Bettis such as to make him vindictively willing to sacrifice his ownership of the 22 pounds of marihuana and say nothing about its presence in the hope of putting Bettis in a possible hole as to his crossing of the border, the record is barren of anything in either direct or inferential basis for regarding the situation as having been so motivated. Any theorizing as to such abnormal action having been involved would in the situation be mere speculation.

Finally, in its appraisal of the aspects which have been referred to, the jury was entitled also to consider the fact previously mentioned, that while Bettis asserted that he had not participated in the use which occurred of the car after the meeting at the restaurant, he did not in his testimony engage in any accounting as to his own whereabouts or actions during the period of such delay.

■ We are satisfied that the circumstances provided an adequate probative basis for the rationalization, inference and evaluation which the jury made in the situation as to Bettis; that he could properly be found to have been in such possession of the marihuana as to entitle the presumption of § 176a to be given application against him; and that his conviction cannot be said to involve such probative doubtfulness as to give rise to a question of due process.

■ As to Nelson, however, we are not satisfied that it legally can be said that such an adequate probative basis existed as to enable him to be found guilty beyond a reasonable doubt. The Government originally proved nothing more in its case against him than that he was seated in the car when it stopped at the port of entry; that he helped to unload the contents of the trunk when the customs officers requested that this be done; and that the officers said he gazed at them when they brought some of the foil-wrapped packages out of the car from under the back seat.

This might be sufficient as a basis for making an arrest of him at the scene as a probable party to the importation. It would not, however, be sufficient as a basis to convict him of having been in fact a party to the importation. His status of riding in the car would not alone create a possession in him, so as to entitle the probative presumption of § 176a to be accorded application against him—such as would be the situation legally in respect to Bettis on his driving and dominion over the car and its contents.

To establish a possession in Nelson, it would have to be made to appear that his riding in the car had some relationship to the presence of the marihuana so that he could probatively be found to be more than a passenger. There would have to be basis for a rational attribution that he had some interest in the marihuana itself, or if he was without any such interest, that he was participating in its importation by some proximate action to effect that end, such that his status in the car was that of an aider and abettor.

Proof of the existence of either of these situations as a basis for establishing a possession in him might sufficiently be made by indication from relationship, attitude, conduct, utterance or other probative circumstances shown. Thus, in Eason v. United States, 281 F.2d 818, 821 (9 Cir. 1960) the court regarded the evidence of "close friendship, joint venture and general conduct" there involved as "sufficient to warrant a reasonable jury finding beyond reasonable doubt that possession was joint." But here there was no indication of personal relationship, actions engaged in together, attitude toward each other, or conduct occurring at the scene to suggest a tie between Bettis and Nelson as to the marihuana. And as the court declared in Julian v. United States, 391 F.2d 279, 280 (9 Cir. 1968): "But where convicting presumptions are projected on possession, the evidence of possession ought to be very clear to satisfy the test of guilt beyond a reasonable doubt". See also Murray v. United States, 403 F.2d 694 (9 Cir. 1968).

The Government's case in chief, as has been indicated, provided no basis legally for a finding of a possession in Nelson. When the court (with expression of doubt) overruled his motion for a directed verdict of acquittal, Nelson took the stand and testified to his claimed lack of any connection with or knowledge of the marihuana situation. His testimony as to leaving the scene and going to do some surfing when he saw that a delay was going to occur in their departure is, as noted, not disputed in the record. While he was, of course, testifying as a defendant, the lack of any contradiction by Bettis or of some circumstance otherwise casting a shadow on this aspect of his testimony makes it difficult to see how he reasonably could be regarded as having gone into Mazatlan and had a part in the acquisition and loading of the marihuana which must have occurred there. We do not believe a possession can be imputed to him beyond a reasonable doubt as either having obtained an interest in the marihuana or as having become an aider and abettor from the events of that trip.

If we were to permit Nelson's conviction to stand it would have to be upon the basis that the sleeping bag which apparently was used at Mazatlan to conceal some of the marihuana by whoever the acquirers and loaders of it had been was the one which Nelson had brought with him and been using at Mazatlan, and that this fact of itself would be sufficient to create a possession in him. Nelson admitted on the stand that the sleeping bag appeared to be the one which he had so had and used. He testified that it was an old one which had been abandoned at the rooming or apartment house where he lived; that after his use of it at Mazatlan he regarded it as a "hang-up", which he did not care to take back with him; that he had indicated to some of the group standing around the evening before his desire to get rid of it; and that Steve, who had heard what he said offered to give him $3.00 for it, which he accepted.

He further testified that he did not thereafter see the sleeping bag; that he had paid no attention to what had been put into the trunk at the time he came back from his surfing interlude after the car had returned from its Mazatlan trip; and that he had first had occasion to note the presence of the sleeping bag when he assisted in unloading the trunk at the request of the customs officers.

If there had been anything to suggest that he had gone on the trip into Mazat-

lan or that he had been a party to the arrangements involved as to the making of the trip, then the presence of the marihuana in the sleeping bag could have afforded a basis for regarding him as having been a party to its acquirement and concealment for importation purposes. His presence in the car at the port of entry would in these circumstances enable a possession to be attributed to him.

If he could not reasonably be regarded as having been involved in the arrangement for or the events of the Mazatlan trip, as we think had to be fairly doubted, then there cannot be said to be any clear evidence for imputing a possession to him so as to entitle the probative presumption of § 176a to be given application against him.

The jury could refuse to believe that he had disposed of the sleeping bag, although his testimony in this respect was not without some seeming credibility. If his testimony as to having disposed of the sleeping bag was a falsehood, the natural corollary of that falsehood would be for him to have denied that the sleeping bag containing the marihuana was the one which he had had. From the record it appears that all those at the beach had some kind of sleeping bag or bedroll. But more than this, the Government obviously had no evidence that the bag involved had been Nelson's, or it would have added such proof to its gossamer case in the clear vulnerability thereof to Nelson's (meritorious) motion for a directed verdict. Finally, even if the sleeping bag had remained Nelson's, the lack of any indication that he had had a part in the Mazatlan trip or the arrangements therefor would not make the fact of its use by whoever acquired the marihuana there and sought to conceal its presence in the car provide clear evidence for establishing a possession in Nelson either as having an interest in the marihuana or as being a knowing aider and abettor thereto. This is not such substance as in our opinion would enable him to be found guilty beyond a reasonable doubt. We

accordingly feel that his conviction cannot legally be permitted to stand.

This result makes unnecessary a consideration of Nelson's other contentions. The other contentions made by Bettis we find to be without substance for a reversal. His principal one is that it was prejudicial error for the Government to be permitted to ask one of the customs officers about the license plate and registration certificate on the car. The officer answered that the car bore a Washington, D. C., dealer's plate. He further stated that the registration certificate indicated that the registered owner of the car was Royal Motors. The court instructed the jury to disregard his statement as to what the registration slip showed. The Government then attempted to follow this with a question as to "what part of the country the registration stated the vehicle was from", but upon objection it withdrew the question.

Bettis' counsel moved for a mistrial upon the ground that the Government was seeking to make the jury believe that the car was a stolen vehicle. We think the court was entitled to appraise the incident as it did: "I think you are a little over-sensitive. I don't think the jury will get any such idea". The Government had no business to ask the questions but, as the many decisions attest, such instances of prosecutorial zeal when they occur call upon the court to deal with the situation upon a realistic basis as to their significance in the particular circumstances. See e. g. Huerta v. United States, 322 F.2d 1, 3 (9 Cir. 1963); Cellino v. United States, 276 F.2d 941 (9 Cir. 1960). It cannot be said that what occurred here would so probably infect or detract from the merits of the trial as to be likely to become a contributing factor in its result.

■ Bettis further seeks to have us make reversal upon the ground that § 176a should be regarded as predicated upon an incorrect scientific classification of marihuana and so should be held to violate the due process clause of the Fifth Amendment and the cruel and un-

usual punishment provision of the Eighth Amendment. The situation presents no more reason or basis for dealing with that question differently than have the court's previous decisions. Gallego v. United States, 276 F.2d 914 (9 Cir. 1960); Halprin v. United States, 295 F. 2d 458 (9 Cir. 1961); Browning v. United States, 366 F.2d 420 (9 Cir. 1966). See also Leary v. United States, 383 F. 2d 851, 860 (5 Cir. 1967).

Affirmed as to appellant Bettis; reversed as to appellant Nelson.