**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jose Robles YBARRA, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jesus Robles YBARRA, Defendant-Appellant.**

**Nos. 25289, 25290.**

United States Court of Appeals, Ninth Circuit.

Aug. 24, 1970.

Sidney L. Felker (argued), of Dowdall, Harris, Hull & Terry, Tucson, Ariz., for Jose Ybarra.

Lillian Fisher (argued), Tucson, Ariz., for Jesus Ybarra.

James E. Wilkes (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., Tucson, Ariz., for appellee.

Before MADDEN,[*] Judge, United States Court of Claims, HAMLEY and TRASK, Circuit Judges.

MADDEN, Judge:

The Ybarra brothers, Jose and Jesus, were indicted on two counts charging violations of federal narcotics laws. Count 2 was dismissed. The defendants were tried before a jury on Count 1 and were found guilty. They have filed separate appeals, but, since they were tried together, the Government, pursuant to Rule 28(i), Federal Rules of Appellate Procedure, Title 28, U.S.Code, has filed only one reply brief.

Sedillo, an Agent of the United States Bureau of Narcotics and Dangerous Drugs, testified that on or about January 20, 1969, he went with an informant whom he did not identify in his testimony, in the informant's automobile, to an address in Tucson, Arizona, viz., 1510 North Hualapai Street; that at that address Sedillo saw Jesus Ybarra motioning to indicate that the Sedillo automobile should be parked farther down the street; that after parking the car Sedillo and the informant got out of the car; Sedillo told Jesus Ybarra that he was the informant's brother-in-law and that he, Sedillo, wanted to buy some heroin; Sedillo gave Jesus Ybarra $30.00; Jesus Ybarra walked down the street, turned into a driveway and walked up to a resi-

---

[*] Honorable J. Warren Madden, Senior Judge of the United States Court of Claims, sitting by designation.

dence where he handed the $30.00 to Jose Ybarra, who was standing on the porch of the residence; that Jose Ybarra then went into the house, soon came out and handed something to Jesus which something the latter held in his clenched hand and returned to the car where Sedillo and the informant were sitting, got into the car, all the time holding what Jose had handed him which Sedillo observed to be two folded pieces of paper, in Jesus' clenched hand; that the car was then driven to a residence, which was 1235 West Sinclair St.; that at that residence Ybarra handed the two pieces of paper to Sedillo.

Sedillo testified that he had had no acquaintance with either of the Ybarra brothers previous to the occasion described above, and that the informant who accompanied him took no part in the event described above except to drive the automobile, and be present in the area of the event.

The contents of the two papers which Jesus Ybarra delivered to Sedillo were heroin.

■ The acts of the defendants recited hereinabove occurred on or about January 20, 1969. Jose Ybarra was not arrested until April 15, 1969. Jesus Ybarra was arrested on July 8, 1969. Their trial took place some six months after Jose's arrest and some three months after Jesus' arrest, Jesus made a motion to quash his indictment on the ground that he was not afforded a speedy trial. The motion was denied. The trial court was, apparently, not impressed with the claim that the six months period between crime and arrest would have dimmed the memory of the defendant and potential but unnamed alibi witnesses to an unreasonable degree. We find no error in the denial of the motion. Wilson v. United States, 409 F.2d 184, C.A. 9 (1969).

Jesus Ybarra moved for a new trial or for arrest of judgment on the ground that a prosecution witness testified to an extra-judicial statement made by Jose, Jesus' co-defendant. The motion was denied, and its denial is asserted as reversible error. Jordan a witness for the prosecution was under cross examination by Jose's attorney. Jordan testified that Jose, after his arrest, said to Jordan that he wanted to cooperate with the prosecution; that he "could make (for the prosecution) a 60-ounce case of heroin". Jose's attorney asked that the answer be stricken, but the court said: "I think you invited it". Jesus' attorney made no objection to the answer. But Jesus did move, in the trial court, for a new trial or for arrest of judgment which motion, as we have said above, was denied.

■ An extra-judicial statement by a party to a suit may, ordinarily, be testified to by a witness who heard the statement made. If one was, as was Jose in our instant case, a co-party defendant with Jesus, his extra-judicial statement would be admissible against himself, but if the statement included facts implicating his co-defendant, those parts of his extra-judicial statement are inadmissible against his co-defendant, because they would violate his Sixth Amendment right to confront and cross-examine witnesses against him. Douglas v. Alabama, 380 U.S. 415, 85 S. Ct. 1074, 13 L.Ed.2d 934 (1965).

In our instant case, Jose's statement, testified to by Jordan, did not implicate Jesus. Jose was seeking to get a "deal" from the prosecution, for himself. His statement did not say, nor imply, that Jesus was in the narcotics business and could make a big case for the prosecution if the prosecution would go easy on him in the instant case. It was, in effect, none of Jesus' business what Jose had said which would harm Jose's case, so long as he had said nothing at all which would affect Jesus' case. Furthermore, the trial court admonished the jury that any statements made by Jose Ybarra were to be considered only against him, Jose.

■ Jordan's testimony as to Jose's extra-judicial statement was admissible against Jose under a well recognized ex-

ception to the hearsay rule. Jose's claim that Jordan's reply to Jose's counsel's question, "and he said he wanted to co-operate, is that correct?" which reply was "He said he could make us a 60-ounce case of heroin", was unresponsive, has no merit. Under the circumstances of this case we cannot say that the trial court was in error in ruling that the answer that was elicited by the cross-examiner was invited and in refusing to strike it. Jordan's answer is not a valid subject of complaint by Jesus Ybarra because it did not concern him at all.

Jose Ybarra asserts that there was not sufficient evidence to support a verdict of guilty against him. We have at the beginning of this opinion narrated the evidence which the prosecution presented against both defendants, and we hold it ample to support the verdicts.

■ Jesus Ybarra asserts that it was error for the prosecution not to provide the defendant with transcripts of Grand Jury proceedings so that the defendant could better know the full nature and extent of charges against him, and that a reporter should have and could have been provided. No authority is cited in support of the foregoing assertion and we are not aware of any such requirement. Failure to record testimony does not violate a defendant's constitutional right. Reyes v. United States, 417 F.2d 916, 918 (9th Cir. 1969); Loux v. United States, 389 F.2d 911, 916 (9th Cir.), cert. denied, 393 U.S. 867, 869, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968).

Jesus Ybarra asserts that the statute, under which punishment for the offense (here charged) is prescribed is unconstitutional for the reason that it imposes a sentence which is cruel and inhuman and violative of the 8th Amendment; and further violates the 14th Amendment because it does not provide for equal protection under the law. The question raised by this assertion of error is not an open one in this circuit. In Halprin v. United States, 295 F.2d 458 (C.A.9, 1961) this court refused to overrule Gallego v. United States, 276 F.2d 914 (C.A.9, 1969) which had held the statute constitutional. And see now Bettis v. United States, 408 F.2d 563 (C.A.9, 1969).

■ Jesus Ybarra asserts that it was error to protect (withhold from disclosure) the name of the informant, under the circumstances. Rulings as to whether or not to require the prosecution to disclose the identity of an informant do not give to a person accused of crime every possible advantage in the construction of his defense. They weigh the importance to the government, federal or state, of being able to use repeatedly the services of an informant against the possibility in a particular case, that disclosure to the defendant of the identity of the informant, thus enabling the defendant to put the informant on the witness stand and get his sworn testimony, might completely defeat the prosecution's case. In the case of McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), for example, the court held that three Chicago policemen's testimony that an informant had frequently in the past given them information about violators of narcotics laws, which information had proved reliable, was sufficient proof of probable cause to justify a warrantless arrest of the defendant, and that the prosecution was not obliged to disclose the identity of the informant. In United States v. Camacho, et al., 423 F.2d 707 (9th Cir. 1970), this court, in response to the appellants' demand to know the identity of the informant, on the question of probable cause, said:

Here the arresting officers not only had information from a reliable informant but also had personal knowledge from surveillance, thus the informant's identity was not necessary for a finding of probable cause. United States v. Cleaver, 402 F.2d 148 (9th Cir. 1968).

The privilege of the prosecution to refuse to disclose the identity of an in-

formant is an important and somewhat unique concession to the prosecution, justified on the ground of the public policy of conserving the usefulness of an informant.

We find no error, and we affirm the judgments.