UNITED STATES of America,
Plaintiff-Appellee,

v.

Stephen Kirk HEIDEN,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Larry Arnold KLEIN,
Defendant-Appellant.

Nos. 73–1471 and 73–1570.

United States Court of Appeals,
Ninth Circuit.

Dec. 16, 1974.

R. N. Harris, Jr., Harris & Hoffman, Los Angeles, Cal. (in 73–1471), Sherman Ellison, Beverly Hills, Cal., for defendants-appellants.

Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before MERRILL and WALLACE, Circuit Judges, and PECKHAM,* District Judge.

## OPINION

WALLACE, Circuit Judge:

Heiden and Klein appeal their convictions, following a nonjury trial, of unlawful possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Both were in a vehicle which was stopped by Border Patrol agents at the San Onofre fixed checkpoint and found to have approximately 110 pounds of marijuana in the trunk. They raise questions concerning claimed Fourth Amendment violations, sufficiency of the evidence to sustain the judgment and loss of certain evidence. We affirm.

The vehicle was stopped at the San Onofre checkpoint on April 24, 1972, and, because it was "setting low" in the rear, was directed to a secondary inspection area to be searched for illegal aliens.

Agent Brady told the driver of the vehicle, Klein, to open the trunk but Klein responded that he could not do so because he had loaned the car to his sister who still had the trunk keys. Klein was directed to remove the back seat but responded that he did not know how to do so. Agent Batchfelder then entered the car and, together with Klein, removed the seat. Batchfelder smelled marijuana and directed Brady to "go in and take a look." Brady entered the vehicle and saw a cardboard beer box which was damaged on one corner. Through the damaged corner, Brady saw a package wrapped in a yellow paper which also had a hole in it. After sticking his finger into the hole, Brady could see a substance like marijuana. Heiden and Klein were then arrested and both were searched while at San Onofre. The missing trunk key was found in Heiden's sock.

### I

Heiden and Klein claim the stop and subsequent search by the Border Patrol agents were invalid under Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). The events of this case transpired prior to the decision in *Almeida-Sanchez* and that case has no retroactive effects to stops and searches at fixed checkpoints. United States v. Bowen, 500 F.2d 960 (9th Cir.), cert. granted, 419 U.S. 824, 95 S.Ct. 40, 42 L.Ed.2d 47 (1974). Thus, the officers could properly look into the trunk.

### II

In order to justify a search for contraband into the contents of the trunk (the box and two footlockers), the agents must have probable cause. Fumagalli v. United States, 429 F.2d 1011, 1013 (9th Cir. 1970). Probable cause, however, may be supplied by the smell of marijuana. United States v. Barron, 472 F.2d 1215, 1217 (9th Cir.), cert. de-

---

* Honorable Robert F. Peckham, United States District Judge, Northern District of California, sitting by designation.

nied, 413 U.S. 920, 93 S.Ct. 3063, 37 L.Ed.2d 1041 (1973); United States v. Leazar, 460 F.2d 982, 984 (9th Cir. 1972).

■ Agent Batchfelder testified that while he and Klein were removing the rear seat, he smelled a strong odor of marijuana. At this point, Batchfelder had probable cause to search the contents of the trunk. Instead of conducting the search himself, however, Batchfelder directed Brady to "go in and take a look." Brady did not testify that he smelled the odor of marijuana. Heiden and Klein contend that in order for the search by Brady to be supported by probable cause, Batchfelder had to tell Brady that he had smelled the marijuana or in some way had to communicate to Brady that he, Batchfelder, had probable cause to search at the time he directed Brady to conduct the search.

A similar argument was made in United States v. Mastberg, 503 F.2d 465 (9th Cir. 1974). There, we found that Border Patrol agents had the necessary real suspicion to justify a strip search of Mastberg. They directed a matron to conduct the search but did not tell her the basis for their suspicions. Mastberg argued that the search by the matron was illegal because the matron did not possess all of the facts justifying the search. In rejecting Mastberg's argument, we said:

> The testimony of the matron demonstrates that she knew that the inspectors believed they had evidence that Mastberg was attempting to smuggle something, otherwise they would not have called upon her to conduct a strip search. It would be an absurdity and a miscarriage of justice for us to reverse this case simply because the inspectors did not communicate to the matron what they considered to be objective, articulable facts to justify a strip search. To require the inspectors to convey the basis of their suspicion to the matron would only be a meaningless gesture which could serve no useful purpose for either law enforcement or protection of an individual's personal rights. In United States v.

Velasquez, 469 F.2d 264, 266 (9th Cir. 1972), we rejected the argument that customs inspectors must convey their knowledge of the facts to a physician before he can conduct a rectal probe. The same principle applies here.

United States v. Mastberg, *supra*, 503 F.2d at 470–471. This is not a case of reprehensible police conduct and we discern no reason to hamper law enforcement with meaningless technical distinctions. Batchfelder, having probable cause, could have searched the contents of the trunk. We see no reason to reverse these convictions because Batchfelder's partner in this operation conducted the search at Batchfelder's direction. *Cf.* United States v. Ragsdale, 470 F.2d 24 (5th Cir. 1972).

### III

Heiden argues that the key found in his sock should have been suppressed because the officer did not have probable cause to arrest him and, therefore, the search could not have been pursuant to a lawful arrest. He also argues that the evidence was insufficient to convict him.

■■ The officers had probable cause to arrest Heiden because they reasonably believed that he was involved in the transporting of 110 pounds of marijuana. The officers were not required to believe his explanation that he did not know about the marijuana. Whether Heiden could later establish that he was only a passenger and did not know about the marijuana was no reason for the officers to let him go free. The passenger doctrine, Bettis v. United States, 408 F.2d 563 (9th Cir. 1969), is not applicable to Heiden's arrest. In the absence of the discovered key, the passenger doctrine might have precluded his conviction of the charges but that doctrine cannot invalidate his arrest. In relation to a passenger in a vehicle containing marijuana, we said in *Bettis*:

> This might be sufficient as a basis for making an arrest of him at the scene as a probable party to the importation. It would not, however, be sufficient as a basis to convict him of

having been in fact a party to the importation.

408 F.2d at 567.

■■■ The search, during which the key was discovered, was pursuant to a valid arrest and was lawful. United States v. Rogers, 453 F.2d 860 (9th Cir. 1971). It was conducted in the interrogation room at the San Onofre checkpoint while arrest forms were being processed and just prior to taking Heiden to the San Diego Jail. Simply because the search was of Heiden's sock does not vitiate the search; the officers had a legitimate reason to search for other contraband or weapons prior to transporting him to jail. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1974).

■■■ Heiden's possession of the trunk key is sufficient to support his conviction for possession of the marijuana. United States v. Ramos, 476 F.2d 624, 626 (9th Cir.), cert. denied, 414 U.S. 836, 94 S.Ct. 182, 38 L.Ed.2d 72 (1973).

## IV

■■■ Heiden and Klein also contend that they cannot be convicted of possession with intent to distribute without expert testimony pertaining to that issue. We reject this contention. The trial court could properly conclude that this 110 pounds of marijuana was not for personal use and that, therefore, some or all would be distributed. Turner v. United States, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); United States v. Childs, 463 F.2d 390, 393 (4th Cir.), cert. denied, 409 U.S. 966, 93 S.Ct. 271, 34 L.Ed.2d 232 (1972).

## V

■■■ Klein claims reversible error because his grand jury proceedings were not recorded. In United States v. Price, 474 F.2d 1223, 1225 (9th Cir. 1973), we held that "in absence of a Government showing that it has a legitimate and compelling interest to be served by non-recordation," a district court abuses its discretion by failing to grant a potential

defendant's motion to have the grand jury proceedings recorded. Klein admits that *Price* applies only where the defendant requests recordation of the grand jury proceedings. Here no such request was made. Since we do not require all grand jury proceedings to be recorded, Loux v. United States, 389 F.2d 911 (9th Cir.), cert. denied, 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 138 (1968), the failure to record the grand jury testimony in this case was not error.

## VI

Klein also urges reversal of his conviction because of the destruction and loss of certain items of evidence. Both the beer box and the marijuana package, each of which had an alleged hole, were destroyed prior to trial by the customs seizure clerk. The government states that because of contraband storage problems in the Southern District of California, the Chief Judge has ordered all but 24 kilo packages may be destroyed in large marijuana seizures. Photographs taken at the checkpoint of the beer box containing the marijuana were admitted into evidence.

Also lost was a report listing the names of persons arrested for contraband offenses at the San Onofre checkpoint during the 90-day period prior to the arrest of Heiden and Klein. Pursuant to a motion, the government had been ordered to prepare this report (which contained the names of persons arrested, the dates of arrest and the amounts of contraband seized) and to submit it to the trial judge in camera. At the joint suppression hearing and trial, the judge announced that the report had been misplaced.

■■■■ When there is loss or destruction of such evidence, we will reverse a defendant's conviction if he can show (1) bad faith or connivance on the part of the government or (2) that he was prejudiced by the loss of the evidence. *See* United States v. Henry, 487 F.2d 912 (9th Cir. 1973). There was no evidence in the record of bad faith or connivance on the part of the government nor can

we infer such. There is no evidence that the box and package of marijuana were not inadvertently destroyed by the government agents who were unaware that the exhibits were desired by the defense. The issue, therefore, is whether Heiden and Klein were prejudiced by the unavailability of the evidence.

The evidence which was lost or inadvertently destroyed was not crucial to establishing guilt. Its primary purpose was to attempt to impeach the officers' credibility at the suppression hearing. The defense evidently sought to show that officers at this checkpoint routinely searched for contraband under the guise of searching for aliens. Presumably, the defense hoped to establish that smelling marijuana was an afterthought used to sustain an otherwise illegal search. But Heiden and Klein have not shown how either the beer box, the marijuana package with a hole in it or the arrest records at San Onofre were crucial to their case.

The need for the list is described as necessary "to more fully ascertain the standard procedure surrounding searches for illegal aliens." If this report were crucial to the defense, however, we cannot understand why steps were not taken to procure the report prior to trial. It had been ordered three weeks before. By the time of the suppression hearing and trial, which were held together, it was too late to interview the people listed. Indeed, Heiden's counsel told the judge that "we wouldn't have time to complete the investigation of the people involved. . . ." On the other hand, if counsel had an unstated intention to use only the report itself, he has failed to demonstrate how Klein was prejudiced. If the report were as significant as Klein now contends, a motion to continue the suppression hearing until its production would seem to have been an appropriate course of action. That motion was not made.

Klein alleges that the box and marijuana package were necessary to cross-examine the officers effectively. Had the box and marijuana package not been damaged in any way, the credibility of officer Brady's testimony might have been affected. A photograph of the box, however, shows that one corner was damaged and that through that hole, a corner of a marijuana package could have been exposed. But even assuming that the box and package could have been produced and that agent Brady's testimony that he saw a damaged corner could have been attacked, such possible evidence does not affect the credibility of agent Batchfelder's testimony that he smelled the marijuana. We cannot say that Klein was prejudiced by the nonavailability of this evidence.[1] See United States v. Sewar, 468 F.2d 236 (9th Cir. 1972), cert. denied, 410 U.S. 916, 93 S.Ct. 972, 35 L.Ed.2d 278 (1973).

Affirmed.

MERRILL, Circuit Judge, with whom PECKHAM, District Judge, concurs, concurring:

I concur in Judge Wallace's opinion but wish to lend emphasis to his warning in footnote 1. Cases will arise where the contraband destroyed does have potential usefulness as evidence not possessed by the sample retained. When this occurs and destruction is shown to have been prejudicial, reversal is called for. I would say that the practice apparently followed in the Southern District invites reversal. I would urge that it be halted; that destruction of evidence follow only after petition and order directed to the particular items to be destroyed, with notice to the defendant and opportunity to petition for access to that which has been seized.

---

1. The government is flirting with the danger of reversal any time evidence is lost or inadvertently destroyed. When evidence is seized, the government should take every reasonable precaution to preserve it. Saving only 24 kilo bricks from large marijuana seizures is, under ordinary circumstances, neither unreasonable nor illogical. Procedures should be instituted, however, that will prevent the type of destruction of evidence as occurred in this case.

We, as a court system, accept the same admonition as it pertains to the misplaced list.