**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**James Lowell BUCKNER, Defendant,**

and

**Kendra Lynn Murry, Defendant–
Appellee.**

No. 98–50369.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1999.

Submission Deferred Feb. 5, 1999.

Resubmitted May 1, 1999.

Filed June 10, 1999.

Bruce R. Castetter, Assistant United States Attorney; Jeffrey A. Taylor, Assistant United States Attorney, San Diego, California, for the plaintiff-appellant.

Matthew C. Winter, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellee.

Before: BRUNETTI, MAGILL,[1] and McKEOWN, Circuit Judges.

MAGILL, Senior Circuit Judge:

The United States appeals the district court's decision granting Kendra Lynn Murry's motion to suppress her post-arrest statements. Border agents stopped the car in which Murry was riding as the sole passenger as it crossed the United States–Mexico border. Upon inspection, agents discovered thirty-seven pounds of marijuana hidden in the car. Agents arrested both the driver and Murry. After being arrested, Murry made several incriminating statements. Murry moved to suppress these statements, arguing that her arrest was unlawful and that the statements she made were obtained as the fruit

1. Honorable Frank Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

of the unlawful arrest. The district court agreed with Murry and suppressed the statements. We reverse the district court's decision.

## I.

On January 23, 1998, James Lowell Buckner, Murry's companion, drove a Chevrolet Sprint with California license plates from Mexico to the United States through the San Ysidro Port of Entry (Port) in San Diego, California. Murry was the sole passenger and was seated in the front passenger seat.

Border agents stopped the car at the Port for primary inspection. Buckner and Murry told Immigration and Naturalization Service (INS) inspector Tyrone Jeffries that they were United States citizens and were not bringing anything back into the country. Buckner also told Jeffries that the Chevrolet belonged to a friend. Jeffries then tapped the rear side panels on the car and noticed that the panels sounded and felt solid. At this point, Jeffries referred Buckner and Murry to the secondary inspection lot for further inspection.

At the secondary inspection lot, INS inspector Ed Drivdahl examined the car with a narcotics detector dog. The dog alerted to the odor of narcotics emanating from the rear quarter panels of the car. INS inspector Bernell Swinson then questioned Murry and Buckner. Buckner stated that he was on his way to Los Angeles, that the car belonged to his friend Leo Garcia, that he had not driven the car into Mexico, that a friend had driven him to Mexico to get the car, and that he had had the car that day only for a few hours. There is no evidence that Murry made any statements at this time.

Agents took Buckner and Murry to the security office and searched them. Buckner had $58 in cash and a driver's license listing an address near Los Angeles. Murry had no money and a California identification card listing a Los Angeles address. A motor vehicles check showed that the car was registered to a Leo Garcia of Los Angeles. Murry and Buckner remained in the security office while Inspector Swinson returned to the car to complete the inspection. He found thirty-seven pounds of marijuana hidden in the dashboard and rear quarter panels of the car.

Murry and Buckner were detained overnight due to the large number of seizures that night.[2] The next morning, agents arrested both Buckner and Murry. The agents advised Murry of her Miranda rights, which she waived. Upon interrogation, Murry made several admissions. She stated that she had initially agreed to drive a car loaded with drugs across the border into the U.S. for a friend named Melanie, but later changed her mind. Murry said that Melanie told her she would find someone else to drive the drugs, and that Melanie gave Murry the keys to another car, the Chevrolet Sprint. Although Melanie told Murry that the Chevrolet contained no drugs, Murry admitted she suspected it did contain drugs. Murry stated she brought Buckner along because she did not have a driver's license.

Murry was indicted by a federal grand jury on February 4, 1998, on one count each of conspiracy to import marijuana in violation of 21 U.S.C. §§ 952, 960, and 963; importation of marijuana in violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2; conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846; and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Murry moved to suppress her post-arrest statements, claiming that she was arrested without probable cause and that her statements were the fruit of the illegal

---

2. Murry does not challenge the search of the car or her overnight detention in the security office.

arrest. The district court granted Murry's motion. It found that Murry's mere presence in the car, without any other indicia tying her to the drugs, was insufficient to support a finding of probable cause.

## II.

 Police may arrest a person without a warrant if the arrest is supported by probable cause. *See United States v. Hoyos,* 892 F.2d 1387, 1392 (9th Cir.1989). Whether police had probable cause to arrest is a mixed question of law and fact, which we review de novo. *See United States v. Prieto–Villa,* 910 F.2d 601, 604 (9th Cir.1990).

 "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *United States v. Garza,* 980 F.2d 546, 550 (9th Cir.1992) (alteration in original) (citation and quotation marks omitted). In drug investigations, the court may consider the experience and expertise of the officers involved. *See Hoyos,* 892 F.2d at 1392–93. This experience and expertise may lead a trained narcotics officer to perceive meaning from conduct which would otherwise seem innocent to the untrained observer. *See Brown v. Texas,* 443 U.S. 47, 52 n. 2, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Hoyos,* 892 F.2d at 1393.

 In this case, the border agents were faced with the following facts in deciding whether to arrest Murry: Murry was a passenger in a car that contained thirty-seven pounds of marijuana hidden in the dashboard and rear panels; Buckner and Murry were entering the United States from Tijuana, Mexico, an area known as a drug source, at a port of entry through which drugs are routinely smug-

gled; neither Buckner nor Murry owned the car; and Buckner stated that he had picked up the car in Mexico, that he had had the car only for a few hours, and that an unnamed friend had taken him to Mexico to pick up the car.[3]

The district court concluded that these facts were insufficient to support a finding of probable cause to arrest Murry. It found that this case was governed by this Court's decision in *United States v. Soyland,* 3 F.3d 1312 (9th Cir.1993), and that Murry's mere presence as a passenger in the car, without some further indicia tying her to the drugs, was insufficient to support a finding of probable cause. The court rejected the government's contention that this Court's earlier decision in *United States v. Heiden,* 508 F.2d 898 (9th Cir. 1974), supported a finding of probable cause to arrest Murry. We conclude that the district court erred in its interpretation of *Heiden* and *Soyland.*

The government correctly argues that this case is governed by this Court's prior ruling in *Heiden,* in which we held that border agents had probable cause to arrest a passenger in a car transporting a large quantity of drugs across the U.S. border. *Heiden,* 508 F.2d at 901–02. In *Heiden,* Border Patrol agents stopped the car in which Heiden was the sole passenger because the agents suspected they were transporting illegal aliens. *See id.* at 900. The driver of the car was unable to produce a key to the trunk, and when asked to remove the back seat, the driver stated he did not know how. *See id.* As the agent and the driver removed the seat, the agent smelled marijuana. *See id.* Upon further inspection, agents discovered 110 pounds of marijuana in the trunk. *See id.* Both Heiden and the driver were arrested, and the officers discovered the missing trunk key in Heiden's sock. *See id.*

---

**3.** The government also argues that the agents relied on their experience that drug traffickers often travel with a companion in order to deflect suspicion. *See, e.g., United States v.*

*Caves,* 890 F.2d 87, 94 (8th Cir.1989) (noting use of man and woman in car to give appearance of vacationing couple is technique often used by drug traffickers to deflect suspicion).

Heiden moved to suppress the key, claiming the agents lacked probable cause to arrest him. This Court, albeit without much discussion, found that the agents had probable cause to arrest Heiden. *See id.* at 901. We stated that the agents "reasonably believed that [Heiden] was involved in the transporting of 110 pounds of marijuana. The officers were not required to believe his explanation that he did not know about the marijuana." *Id.*[4]

We believe Murry's situation is analogous to the situation in *Heiden.* Murry, like Heiden, was the sole passenger in a car transporting a large quantity of drugs across the U.S. border. Those facts were sufficient to support a finding of probable cause to arrest Heiden. Therefore, *Heiden* dictates our conclusion that Murry's arrest was lawful and that her statements were lawfully obtained.

■ Notwithstanding this Court's decision in *Heiden,* Murry argues that her mere presence in the car does not support a finding of probable cause to arrest her. In support of her argument, Murry argues that the Supreme Court's decision in *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), decided after *Heiden,* and this Court's more recent decision in *Soyland,* undermine our decision in *Heiden.* Both cases stand for the general proposition that a person's mere presence or "mere propinquity" to criminal activity alone does not support probable cause to search or arrest that person. *Ybarra,* 444 U.S. at 91, 100 S.Ct. 338; *see Soyland,* 3 F.3d at 1314. We conclude that the mere presence doctrine does not require suppressing Murry's statements in this case.

In *Ybarra,* police had information that a bartender named Greg was dealing heroin out of a bar. 444 U.S. at 88, 100 S.Ct. 338. Police obtained a search warrant for the bartender and the bar. *See id.* When police arrived at the bar, they frisked all patrons, including Ybarra, and found six packets of heroin on Ybarra's person. *See id.* at 88–89, 100 S.Ct. 338. The Supreme Court held that the police lacked probable cause to search Ybarra. *See id.* at 90–91, 100 S.Ct. 338. Ybarra's "mere propinquity to others *independently suspected* of criminal activity [did] not, without more, give rise to probable cause to search [Ybarra]." *Id.* at 91, 100 S.Ct. 338 (emphasis added). The police had no reason to believe that Ybarra had committed or was about to commit a crime; he was merely present, with other customers, in a bar where police had information about the criminal activity only of the bartender. *See id.*

This Court relied on the mere presence doctrine in reaching its result in *Soyland. See Soyland,* 3 F.3d at 1314. In that case, Soyland was the sole passenger in a car stopped at an immigration checkpoint. *See id.* The car had bags and boxes piled in back, and an agent stopped the car to inspect it. *See id.* As the driver exited the car to open the hatchback, the agent smelled methamphetamine, but never smelled it again during his search. *See id.* Although the agent did not find any contraband, he asked the driver for her permission to search the car. *See id.* After obtaining the driver's consent to search, the agent found paraphernalia used to dilute narcotics and about $4,000 in cash in the car. *See id.* He then asked the driver whether there were any drugs in the car.

---

4. The *Heiden* court relied on this Court's decision in *Bettis v. United States,* 408 F.2d 563 (9th Cir.1969), another border search case. *See Heiden,* 508 F.2d at 901–02. In *Bettis,* one of the defendants, Nelson, was a passenger in a car in which marijuana was found under the back seat and in the trunk. *Bettis,* 408 F.2d at 564. Nelson was arrested and convicted of importation of marijuana. *See id.* The facts offered to support his conviction were that Nelson was a passenger in the car,

he helped unload the contents of the trunk upon the officers' request, and he "gazed" at the officers when they brought the marijuana out from under the back seat. *Id.* at 567. This Court held that these facts were insufficient to support a conviction for importation. *See id.* Although it invalidated the conviction, this Court noted that these facts "might be sufficient as a basis for making an arrest of [Nelson] at the scene as a probable party to the importation." *Id.*

The driver admitted she had two marijuana cigarettes in her cigarette pack. *See id.* A further search of the car turned up a third marijuana cigarette, about $600 in cash, and a pipe containing marijuana residue. *See id.* Police then searched Soyland without his consent and found approximately 220 grams of methamphetamine on his person. *See id.* This Court held that the methamphetamine should have been suppressed because the agents lacked probable cause to search Soyland. *See id.* We stated that there was "not a sufficient link between Soyland and the odor of methamphetamine or the marijuana cigarettes, and his mere presence did not give rise to probable cause to arrest and search him." *Id.* (quotation marks omitted).

As *Ybarra* and *Soyland* demonstrate, the mere presence doctrine has logical application where the facts and circumstances do not support an inference that the individual is connected to the proximate criminal activity. In *Ybarra*, police unlawfully searched Ybarra based on criminal activity in a public establishment, where there were numerous other patrons, and where the police had specific information regarding one person's criminal activities. Nothing could be inferred from Ybarra's mere presence in the bar. In *Soyland*, police attempted to support a finding of probable cause to search a passenger after finding a small quantity of drugs and other random drug paraphernalia, linked to the driver by her own admission, and which were indicative of personal consumption, not drug trafficking. In each of these cases, police had no information to link the defendant to the criminal activity at hand. *See also United States v. Vaughan*, 718 F.2d 332, 333–34 & n. 5 (9th Cir.1983) (finding no probable cause to arrest passenger based on mere presence in car with two wanted felons; police had arrest warrants for driver and another passenger for drug-smuggling conspiracy for which they had been indicted, but had no information that defendant-passenger was involved in the conspiracy and no crime was being committed at the time).

In contrast, here the attendant facts and circumstances support a fair probability that Murry was linked to the crime of drug trafficking. Murry was the passenger in a car loaded with a commercial quantity of marijuana, the car belonged to neither occupant, and the car was procured under suspicious circumstances. Given these facts, a prudent and experienced police officer might reasonably suspect that the passenger is involved in drug smuggling. *See Fernandez v. Perez*, 937 F.2d 368, 370–71 (7th Cir.1991) (citing *Heiden* and holding officer had probable cause to arrest passenger when officer found unregistered gun and bullets in trunk of car and could not establish who owned gun); *cf. Wyoming v. Houghton*, —— U.S. ——, ——, 119 S.Ct. 1297, 1302, 143 L.Ed.2d 408 (1999) ("[A] car passenger-unlike the unwitting tavern patron in *Ybarra*-will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing.").

■ As we have previously noted, it may be the case that the facts supporting an arrest in a drug smuggling case will not be enough to convict a passenger, *see United States v. Ramirez*, 176 F.3d 1179, 1181 (9th Cir.1999) (holding passenger's "mere knowledge of the presence of contraband, without evidence suggesting a passenger's dominion or control of the contraband, is insufficient to prove possession"); *United States v. Sanchez–Mata*, 925 F.2d 1166, 1169 (9th Cir.1991) ("[I]t is well established that a passenger may not be convicted unless there is evidence connecting him with the contraband, other than his presence in the vehicle." (citation and quotation marks omitted)), but that does not mean that police lack probable cause to arrest a passenger "as a probable party to the importation." *Bettis v. United States*, 408 F.2d 563, 567 (9th Cir.1969); *see also Heiden*, 508 F.2d at 901 ("In the absence of the discovered key, the passenger doctrine might have precluded [Heid-

en's] conviction of the charges but that doctrine cannot invalidate his arrest.").

## III.

The decision of the district court is REVERSED.