**UNITED STATES of America, Plaintiff and Appellee,**

v.

**Frank Leroy THOMAS, Defendant and Appellant.**

**UNITED STATES of America, Plaintiff and Appellee,**

v.

**Alfred Dennis LUCAS, Defendant and Appellant.**

Nos. 71–1842, 71–1843.

United States Court of Appeals, Ninth Circuit.

Dec. 20, 1971.

Certiorari Denied April 17, 1972. See 92 S.Ct. 1516.

**142**

G. Dennis Adams (argued), San Diego, Cal., for appellant Frank Leroy Thomas.

William A. Brockett, Charles M. Sevillá, San Diego, Cal., for appellant Alfred Dennis Lucas.

John R. Neece, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., Robert H. Filsinger, Chief, Crim. Div., San Diego, Cal., for appellee United States.

Before MERRILL and TRASK, Circuit Judges, and FERGUSON,* District Judge.

PER CURIAM:

These consolidated appeals follow a conviction by jury trial of the appellants Thomas and Lucas. The indictment charged appellants with conspiracy to smuggle marihuana, smuggling marihuana and transporting marihuana. Lucas was found guilty of the smuggling and transporting counts (21 U.S.C. § 176a), and Thomas was found guilty of the transporting count.

THOMAS APPEAL

Thomas contends that the district court erred in denying his motion for acquittal at the close of the govern-

---

* Hon. Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

ment's case. The evidence is summarized in the government's brief.

At 2:00 a. m. on Tuesday morning, September 1, 1970, two Negroes, appellants Lucas and Thomas, drove up to the primary inspection lane at the port of entry, San Ysidro, California. At primary inspection, Inspector Konopacky asked appellants if they had anything to declare; Lucas, the driver said no, that they just went down to Mexico for beer and girls.

Lucas was asked who owned the car and he said, "a friend"; he was asked to open the trunk and was asked again who owned the car and he replied, "my brother". Because of these responses regarding the car's ownership and due to the fact that Lucas was overly friendly, the car was referred to secondary.

Inspector Konopacky, while walking the car to secondary, noticed a non-factory compartment underneath the car containing what appeared to be colored packages. A search of that compartment revealed five kilos of marihuana; nineteen more kilos were discovered under the back seat.

As Konopacky was escorting the Lucas automobile to secondary, he called to Inspector Stewart to take his position on the line. As Stewart approached primary, he came upon an automobile containing two Negroes who drove up immediately behind the Lucas vehicle. The occupants of this car were identified as Arthur Wilson and Lolita K. Graves. Stewart felt this car might be tied in with the Lucas vehicle and referred it also to secondary.

In the Wilson car were found matchbooks which were identical to matchbooks found on Lucas. In addition, in Lolita Graves' purse was found a walkie-talkie which was identical to a walkie-talkie found in the glove compartment located in front of Thomas. Both walkie-talkies were operational.

Konopacky also testified that when he got into Lucas' car there was a strong odor of marihuana throughout the vehicle. He further noticed that while Lu-cas stated in the presence of Thomas that they had been down to Tijuana for beer and girls, neither appellant appeared to be intoxicated, nor could Konopacky smell alcohol on their breaths although he was as close as twelve inches from both individuals.

The theory of the defense was that Wilson and Graves (who later hijacked an airplane and fled to Cuba) and Ray Smith had used Lucas and Thomas as unknowing mules.

Lucas testified that he and Thomas went down to Tijuana and did a lot of drinking and ran into Ray Smith in a bar. Smith was described as a red-headed Negro, whom Lucas had never seen before.

Lucas first stated that Smith gave him $10 to drive the car for Smith's brother who was in jail. Later, when Lucas could not account for the $10 supposedly given to him, he claimed that Smith had just bought them drinks and let him keep the change.

Lucas stated he told the story to Customs agents when he was arrested. This was denied by Agent Williams on rebuttal.

■ It is firmly established that mere presence or proximity to contraband in an automobile, without more, is insufficient to establish the guilt of a passenger for transporting. *Arellanes v. United States*, 302 F.2d 603 (9th Cir. 1962), cert. denied, 371 U.S. 930, 83 S. Ct. 294, 9 L.Ed.2d 238; *Doherty v. United States*, 318 F.2d 719 (9th Cir. 1963); *Murray v. United States*, 403 F. 2d 694 (9th Cir. 1968); *Bettis v. United States*, 408 F.2d 563 (9th Cir. 1969).

■ In this case, the record is void of any evidence of what acts Thomas did to make him guilty of transporting marihuana. While inferences from facts which have been established by circumstantial evidence may be sufficient to sustain a verdict of guilt, *United States v. Nelson*, 419 F.2d 1237 (9th Cir. 1969), mere suspicion or speculation cannot be the basis for the creation of logical inferences.

■ The judgment of conviction against the appellant Thomas is reversed.

## LUCAS APPEAL

Lucas contends that the district court committed reversible error in denying his motion for a separate trial from Thomas.

During the second day of trial, Lucas made a motion for separate trial based upon an affidavit filed by his attorney. That affidavit stated that Thomas had told Lucas that if Thomas were called to the stand he would testify in Lucas' behalf corroborating Lucas' testimony. However, Thomas' attorney had informed the affiant (Lucas' attorney) that Thomas would not testify in order to preserve Thomas' right to a judgment of acquittal. The affidavit then set forth that Thomas' attorney stated that he probably would advise Thomas not to testify even if Thomas' motion of acquittal were granted, although he was nearly certain, based upon conversations with Thomas, that Thomas would testify if Thomas were acquitted.

Lucas does not question the joinder of the charges against Lucas and Thomas in a single indictment. However, he sought an order pursuant to Rule 14 of the Federal Rules of Criminal Procedure granting a severance of the trials. The motion was made after trial began, and the court does not express any opinion whether the motion was timely made. *See* Barnes v. United States, 347 F.2d 925 (8th Cir. 1965).

■■ The power vested in the district court pursuant to Rule 14 is discretionary, and the only question on appeal is whether such discretion has been abused. Parker v. United States, 404 F.2d 1193 (9th Cir. 1968), cert. denied, 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782 (1969). The test is whether a joint trial was so prejudicial to one defendant as to require the exercise of that discretion in only one way, that is, by ordering a separate trial.

■ When there has been insufficient showing that the codefendant would actually testify at a severed trial, the district court has not abused its discretion by refusing to grant the motion. United States v. Kilgore, 403 F.2d 627 (4th Cir. 1968), cert. denied, 394 U.S. 932, 89 S.Ct. 1204, 22 L.Ed.2d 462 (1969). The affidavit submitted by Lucas is clearly insufficient to require the conclusion that Thomas would testify at a severed trial. It is clear that Thomas' counsel would have vigorously acted to prevent Thomas from testifying until such time as Thomas had first been acquitted.

■ In light of the remote likelihood of Thomas' testifying and the fact that his testimony would merely be cumulative, the district court did not abuse its discretion in refusing to sever the trials. *See* Byrd v. Wainwright, 428 F.2d 1017 (5th Cir. 1970).

The conviction of the appellant Lucas is affirmed.