15 F.3d 1092
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Olga HERNANDEZ-LIMON, Defendant-Appellant.
 No. 93-50219.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1993.
Decided Jan. 5, 1994.
 
 Before: FLETCHER, PREGERSON, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant was in the passenger seat of a car in which 81 pounds of marijuana were hidden. She was arrested along with the driver when the marijuana was discovered at a port of entry into the United States. A jury found her guilty of importation and possession with intent to distribute the marijuana, of conspiracy to import and to possess the marijuana, and of tampering with a witness. She appeals the district court's refusal to accept her guilty plea, her convictions, and her sentence.
 
 
 3
 We have jurisdiction to hear her timely appeal pursuant to 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742. We hold that the district court abused its discretion in refusing to accept her guilty plea, and erred in imposing sentence. We conditionally vacate her convictions, and remand with instructions.
 
 BACKGROUND
 
 4
 At about 8 p.m. on July 15, 1992, Olga Hernandez-Limon and her co-defendant, Francisco Gonzales, drove into the United States at the San Ysidro, California port of entry. Gonzales was driving. An inspector referred their car to the "secondary inspection area" where an Inspector Esposito approached the driver's side of the car and began asking some questions in English. Esposito testified that both Gonzales and Hernandez-Limon appeared somewhat nervous.
 
 
 5
 Esposito asked if Gonzales had anything to declare. He answered no, and Hernandez-Limon answered no as well, apparently without being asked. Similarly, when Esposito asked who owned the car, both defendants answered "a friend." They both also stated they were going to a friend's house; Hernandez-Limon said the friend's name was Enrique, and that he lived on E Street in Chula Vista, California. When Esposito asked to see the car's registration, Gonzales was silent; Hernandez-Limon said the papers were at Enrique's house.
 
 
 6
 Regarding this exchange, Esposito testified that Hernandez-Limon became progressively more nervous, turning her body to face him, fidgeting, and speaking faster. He also testified on cross examination that she appeared to be helping Gonzales, who seemed to have trouble with English, to answer the questions.
 
 
 7
 Esposito asked Gonzales and Hernandez-Limon to get out of the car. A pat-down search revealed some marijuana in Gonzales' pocket, and a search of Hernandez-Limon's purse turned up $1,170 in U.S. currency, and three pieces of identification, two of which were for other women. A subsequent search of the car revealed packages containing about 81 pounds of marijuana under the hood.
 
 
 8
 After being read her Miranda rights and waiving them, Hernandez-Limon talked with an Inspector Diaz. She said she had known Gonzales for four years, and that they had been on the way to the home of two friends, Junior and Veronica, who lived off E Street in Chula Vista. She claimed to have visited Junior and Veronica three times previously, but did not know their last names or their address. She also claimed to work as a realtor.
 
 
 9
 Customs Service Agent Miller then placed Hernandez-Limon under arrest, and transported her to the Metropolitan Correctional Center (MCC). He testified that on the way she initiated a conversation, in Spanish, by asking whether he was married. She then nodded at her purse (which was between them on the seat) with her head, and said something like "I have one in my bag." Thinking she meant something about jewelry, he said "jolleria" (jewelry store) and she said "yes, in my purse." She also said something like "En mi bolsa por ayuda" ("in my purse for help"). Agent Miller took this to be an attempted bribe. He admitted to being a "marginal" and "limited" Spanish speaker.
 
 
 10
 While in detention at the MCC, Hernandez-Limon wrote a letter to Gonzales, pleading with him to
 
 
 11
 [t]ell the truth, that if you didn't know anything, I knew even less, since you were driving. If you say how it was, that we were invited to have a glass of wine, and that you asked Enrique if you could borrow his car. This way, I get out without paying anything.
 
 
 12
 She also promised to "do anything in the world to get you out," and to ask Enrique for money for Gonzalez' bond.
 
 
 13
 On July 29, 1992, the grand jury returned a four-count indictment, charging Hernandez-Limon and Gonzalez with conspiracy to import marijuana, importation, conspiracy to possess with intent to distribute, and possession with intent to distribute. After Hernandez-Limon's letter to Gonzalez was discovered, the charge of tampering with a witness was added to her indictment.
 
 
 14
 On July 30, 1992, Hernandez-Limon entered a not guilty plea. On August 20, 1992, Gonzales plead guilty to a superseding, one-count indictment charging him with possession of marijuana; his plea was accepted and he was sentenced to 60 days custody. On October 21, 1992, Hernandez-Limon (now represented by a different attorney) attempted to plead guilty to a similar possession charge. Based on the following exchanges during the plea colloquy, the court rejected her guilty plea.
 
 
 15
 When the court asked her to confirm her wish to plead guilty to possession of a controlled substance, she said "what do you mean by possession?" When the court replied "that you knowingly and intentionally had control over some marijuana," she said, "I was in the car, but there was--I was--the guy was driving the car and I was in the car." At that point the court noted, "we may have a problem," and asked her attorney if he wanted to talk to her for a minute.
 
 
 16
 She conferred with her attorney and the colloquy continued. Eventually, after providing a number of answers the court found unsatisfactory, she told the court "I knew that he had the drug there, that he might have a lot of drug there." The court asked if she were along "to try to help get the drugs through the border." She replied "yes". The court asked why she agreed to help, and she replied "because I was just coming along with him. Well, just for--I was just coming in."
 
 
 17
 At this point the court expressed its concern that Hernandez-Limon had not admitted enough to create a factual basis for her "dominion and control" of the marijuana. The court told Hernandez-Limon that "I can't accept a plea of guilty if you're not guilty." It expressed frustration that it had "wasted 52 minutes trying to get this disposition," and told her "you don't have to plead guilty.... [it's y]our choice."
 
 
 18
 The court then allowed Hernandez-Limon's attorney to question her in order to develop a factual basis. Hernandez-Limon again said she suspected that Gonzales had put some drugs in the car. Counsel asked her "were you there to help him bring across drugs?" She replied "yes". To clarify this, the court then asked if she were along to "help make it look like you were husband and wife" so that Customs would be less suspicious of them. She said "no". The court asked, "why were you along then?" She said, "because I just felt like coming in just because." At this point the court ended the colloquy, refusing to accept her plea, and proceeded to the motions hearing.
 
 
 19
 Hernandez-Limon's trial began on December 15, 1992. A jury found her guilty of all five counts in the indictment on December 18, 1992. At sentencing, on March 4, 1993, the district court granted her a one-level reduction for acceptance of responsibility. She was sentenced to 21 months in prison to be followed by three years of supervised release.
 
 DISCUSSION
 I. Hernandez-Limon's Guilty Plea
 
 20
 Under Rule 11(f) of the Federal Rules of Criminal Procedure, "the court shall not enter judgment upon [a guilty plea] without making such inquiry as shall satisfy it that there is a factual basis for the plea." The court must therefore satisfy itself that "the conduct which the defendant admits constitutes the offense charged in the indictment or information, or an offense included therein to which the defendant has pleaded guilty." Advisory Committee Notes to 1966 Amendment; see United States v. Partida-Parra, 859 F.2d 629, 631 (9th Cir.1988). The trial court's decision to reject a guilty plea will be reversed only if found to be an abuse of discretion. Santobello v. New York, 404 U.S. 257, 262 (1971); United States v. Alvarado-Arriola, 742 F.2d 1143, 1144 (9th Cir.1984).
 
 
 21
 Hernandez-Limon was attempting to plead guilty to possession of a controlled substance. See 18 U.S.C. Sec. 844. As the district court rightly recognized, her possession could have been established by an admission of knowledge coupled with either admissions of her "dominion and control" over the marijuana, or alternatively on an "aiding and abetting" theory (admissions of helping Gonzales). See United States v. Sanchez-Mata, 925 F.2d 1166, 1168-69 (9th Cir.1991).
 
 
 22
 The transcript of the plea colloquy reveals that Hernandez-Limon wanted to plead guilty, but was somewhat confused about the district court's goal in attempting to secure a factual basis. The district court seemed to think that her embarrassment at confessing her guilt in open court made her recalcitrant in answering its questions.
 
 
 23
 She did, however, clearly admit to helping Gonzales smuggle the marijuana across the border--conduct which constitutes possession of marijuana. She said, "I knew that [Gonzales] had the drug there, that he might have a lot of drug there." This exchange then followed:
 
 
 24
 COURT: Okay. But did you know he had a lot of drugs in the car and you were along to try to help get the drugs through the border?
 
 
 25
 MS. HERNANDEZ-LIMON: Yes.
 
 
 26
 This statement is sufficient to establish the factual basis for possession on an aiding and abetting theory. Moreover, Hernandez-Limon repeated it during a subsequent examination by her attorney:
 
 
 27
 MR. CARRIEDO: Now, but when you came across the border ... as a passenger in the vehicle, were you there to help him bring across drugs?
 
 
 28
 MS. HERNANDEZ-LIMON: Yes.
 
 
 29
 The district court's decision to reject her plea seems largely based on her answers to the court's questions about her motivation for helping Gonzales. The court twice asked Hernandez-Limon why she had come along with Gonzales, and she answered "I was just coming along with him," and "I just felt like coming in just because.". While the district court was commendably diligent in attempting to make sure a factual basis existed, Hernandez-Limon's motive in helping to smuggle the marijuana is not an element of a possession charge under 18 U.S.C. Sec. 844. Hernandez-Limon's incomplete answers to these questions should therefore not have counted against her.
 
 
 30
 By way of comparison, we also consider the factual basis established for Gonzales' plea to the same Sec. 844 charge. In many respects, his story was the mirror image of hers: he claimed that the car was hers, that he suspected she had hidden drugs in it, and that he nonetheless agreed to drive the car across the border. Unlike Hernandez-Limon, however, he admitted neither to actually knowing about the marijuana, nor to intentionally helping her transport it. Like Hernandez-Limon, Gonzales gave a completely unsatisfactory account of his motivation for coming along.[1] The district court nonetheless accepted his guilty plea.
 
 
 31
 Because Hernandez-Limon admitted to sufficient conduct to make out a Sec. 844 violation, and because she admitted to at least as much as Gonzales, whose guilty plea was accepted, we find that it was an abuse of discretion for the district court to reject her guilty plea.
 
 II. Sufficiency of the Evidence
 A. Standard of Review
 
 32
 Hernandez-Limon argues that the evidence is insufficient to support her convictions. A conviction is supported by sufficient evidence if " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Circumstantial evidence and inferences drawn from it may be sufficient to support a conviction. United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992).
 
 B. Conspiracy Convictions
 
 33
 The elements of a conspiracy charge are an agreement to accomplish an illegal objective, one or more acts in its furtherance, and the intent to commit the underlying substantive offense. United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987). While the government need only establish, by substantial evidence, a "slight" connection between defendant and the conspiracy, id., mere knowledge or passive acquiescence is not enough. United States v. Cloughessy, 572 F.2d 190, 191 (9th Cir.1977). The existence of a conspiracy, and defendant's connection to it, can be inferred from circumstantial evidence. United States v. Foster, 985 F.2d 466, 469 (9th Cir.1993).
 
 
 34
 Here, the key issue is whether the evidence is sufficient to support the jury's inference that Hernandez-Limon was more than a mere passenger. United States v. Thomas, 453 F.2d 141, 143 (9th Cir.) ("mere presence or proximity to contraband in an automobile, without more, is insufficient to establish the guilt of the passenger for transporting"), cert. denied, 405 U.S. 1069 (1972). The government argues that several pieces of evidence support this inference.
 
 
 35
 First, Hernandez-Limon admitted to knowing Gonzales for the past four years.[2] This goes to both knowledge of the drugs, Eason v. United States, 281 F.2d 818, 821 (9th Cir.1960) (jury may infer defendant's knowledge of contraband in car from evidence of close friendship with co-defendant), as well as the existence of a conspiracy. United States v. Sanchez-Mata, 925 F.2d at 1168 (discussing "long-term or familial relationship" as evidence in support of conspiracy).
 
 
 36
 Second, the government argues that knowledge of the marijuana, and a conspiratorial agreement, can also be inferred from Inspector Esposito's testimony that Hernandez-Limon, like Gonzales, was nervous when directed to the secondary inspection area--and became more so as the questioning progressed. We hesitate, however, to give much weight to this factor. Compare id. at 1167 (defendant's convictions reversed despite fact that he "looked nervous" and "several times had eye contact" with co-defendant during investigatory stop) with United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir.) (defendant's "apparent nervousness" at airport inspection was valid circumstantial evidence that he knowingly possessed cocaine found in his luggage), cert. denied, 498 U.S. 961 (1990).
 
 
 37
 The government also contends that Hernandez-Limon's alleged attempt to bribe Agent Miller with jewelry from her purse shows a "consciousness of guilt." Red Br. at 26. Given the ambiguity of the exchange and the language problems between her and Miller, however, it would be unreasonable to infer a serious bribe attempt here.
 
 
 38
 More serious is the government's claim that Hernandez-Limon's control over the marijuana and her participation in the conspiracy are demonstrated by the fact that she took the lead in answering Inspector Esposito's questions, despite the fact that they were addressed primarily to Gonzales. See United States v. Irion, 482 F.2d 1240, 1247 (9th Cir.) (defendant was not a mere passenger on boat containing contraband because he "actively participated in the conversations with the officers and joined in exculpatory statements which were obviously false"), cert. denied, 414 U.S. 1026 (1973). There is no showing here that any of Hernandez-Limon's exculpatory statements were "obviously false," but her statements to Inspector Esposito certainly were inconsistent with her later statements to Agent Diaz.
 
 
 39
 To this must be added the fact that Hernandez-Limon's purse contained $1170 in U.S. currency and two pieces of identification which were not her own. Possessing large amounts of cash or other people's identification are not illegal, but "[a]ctions which seem otherwise innocent, when viewed in the context of the surrounding circumstances, may justify an inference of complicity." United States v. Calabrese, 825 F.2d 1342, 1348 (9th Cir.1987); cf. United States v. Lopez, 625 F.2d 889 (9th Cir.1980) (fact that defendant had only $42.55 in his pockets at time of arrest was evidence that he was not part of conspiracy); Sanchez-Mata, 925 F.2d at 1167 (same--amount was $24).
 
 
 40
 In challenging the conspiracy convictions, Hernandez-Limon relies primarily on Sanchez-Mata. There, a group of three persons and not Sanchez-Mata were under surveillance at suspected drug drop-off. Sanchez-Mata was observed for the first time arriving at a parking lot with the other three, getting out of the Toyota in which they all arrived and into the passenger seat of a parked Audi. The Audi drove off and was soon stopped; 141 pounds of marijuana was found in the trunk (which had not been opened in the parking lot). This court reversed Sanchez-Mata's conspiracy conviction because the government had failed to show he was anything more than a passenger. He had only $24 in his possession, he did not attempt to evade capture, he had no long-term or familial connections to the other defendants, no drug transaction was under way at the time of arrest, and his finger prints were not on the marijuana packages. Id. at 1168. In short, his behavior was "consistent with that of an innocent person." Id.
 
 
 41
 In contrast, Hernandez-Limon had known Gonzales for four years, had over $1100 in her possession, had two pieces of identification not belonging to her, seemed to participate at least as much as Gonzales in making exculpatory statements, and made some inconsistent statements. This kind of circumstantial evidence is substantially more than is typical in those cases where a passenger has been found to be "just a passenger." Sanchez-Mata; Thomas, supra, 453 F.2d at 143 ("the record is void of any evidence" linking passenger to drugs hidden in car); United States v. Soto, 779 F.2d 558, 561 (9th Cir.) (firearm possession conviction reversed because of government's failure to present evidence connecting passenger-defendant to guns hidden in a van), cert. denied, 484 U.S. 833 (1987).
 
 
 42
 The evidence discussed above is sufficient to support a finding, beyond a reasonable doubt, that Hernandez-Limon and Gonzales had an agreement to possess and import a large quantity of marijuana, and that Hernandez-Limon knowingly participated in its transportation. We therefore find sufficient evidence to support the conspiracy conviction.
 
 C. Possession and Importation Convictions
 
 43
 Hernandez-Limon was also convicted of possession with intent to distribute and of importation. To establish possession, "the government must prove that the defendant both knows of the presence of the contraband and has the power to exercise dominion and control over it." Sanchez-Mata, 925 F.2d at 1169.[3] Importation is established by showing possession along with entry into the United States.
 
 
 44
 Hernandez-Limon relies on Sanchez-Mata, Thomas, and Bettis v. United States, 408 F.2d 563 (9th Cir.1969). Sanchez-Mata and Thomas reversed conspiracy and possession convictions where the defendant was a "mere passenger." In those cases there was no circumstantial evidence of the type present here; indeed there was a complete lack of proof of any connection between those passenger-defendants and the contraband. Bettis is the same type of case. Defendant Nelson was a passenger in Bettis' car when a large amount of marijuana was discovered at the U.S. border. Nelson had come to Mexico at a different time than Bettis, and did not know him previously. Nelson claimed they met at a rooming-house in Mexico and that Nelson accepted Bettis' offer of a ride back to the United States because he did not have the money for bus fare. The government presented no evidence against Nelson other than his presence in the car at the border. He was not present when the marijuana was hidden, and because of its dryness it did not release an odor he could have detected. The court acknowledged that possession can be established by inference "from relationship, attitude, conduct, utterance, or other probative circumstances." Id. at 568. But it found no such circumstances in Nelson's case, and therefore reversed his possession conviction.
 
 
 45
 There is a good deal more circumstantial evidence against Hernandez-Limon than there was against the defendants in Sanchez-Mata, Thomas, and Bettis. In the words of Bettis, her possession can be inferred from "relationship" (4 years of friendship with Gonzales), "attitude, conduct, [or] utterance" (her nervousness at the border, the fact that she took charge in answering Esposito's questions, and her inconsistent statements), and "other probative circumstances" (her possession of $1170 and two other women's identification cards). The evidence against Hernandez-Limon was sufficient to support her possession convictions.
 
 D. Tampering with a Witness Conviction
 
 46
 A defendant tampers with a witness if she "knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so" in an attempt to "influence, delay, or prevent the testimony of any person in an official proceeding." 18 U.S.C. Sec. 1512(b) (supp.1993).
 
 
 47
 The only evidence in support of Hernandez-Limon's witness tampering conviction is the letter she wrote to Gonzales while they were both in custody. The letter is clearly an attempt to influence his testimony; the question, however, is whether it constitutes an attempt at "corrupt persuasion." The term "corrupt" has not been construed in this circuit in the context of 18 U.S.C. Sec. 1512; certainly, however, it encompasses the claim made here: that one defendant has attempted to persuade a co-defendant to lie.[4] We thus inquire whether there is sufficient evidence from which a jury reasonably could find that Hernandez-Limon's letter was written with the purpose of persuading Gonzales to lie.
 
 
 48
 The government argues that the letter attempts to "feed" Gonzales a story which would exculpate Hernandez-Limon, and promises to reward him if he plays along. Hernandez-Limon counters that the letter's intent is captured in her opening plea to "tell the truth." Offering to help a co-defendant if he tells the truth is not a crime.
 
 
 49
 However, the letter asks Gonzales to say that Hernandez-Limon knew nothing about the drugs in the car. Since the jury by its other verdicts necessarily found that Hernandez-Limon had knowledge of and participated in the drug smuggling, there is necessarily sufficient evidence from which the jury could infer that her letter is an attempt to get Gonzales to lie. We therefore find sufficient evidence to sustain the witness tampering conviction.
 
 
 50
 III. One-Level Reduction for Acceptance of Responsibility
 
 
 51
 The district court granted Hernandez-Limon a one-level reduction for acceptance of responsibility. The district court judge's determination that a defendant has accepted responsibility is reviewed for clear error. United States v. Martinez-Gonzalez, 962 F.2d 874, 878 (9th Cir.1992).
 
 
 52
 The district court's one-level reduction was based partially on a letter Hernandez-Limon wrote to the court before sentencing, and partially on the court's feeling that Hernandez-Limon's problems with her various lawyers had perhaps contributed to the failure of her attempt to plead guilty. The judge said she was giving Hernandez-Limon the "benefit of the doubt."
 
 
 53
 The Guidelines provide for a two-level reduction, not a one-level reduction. U.S.S.G. Sec. 3E1.1(a). The notes and background commentary do not indicate that the Sentencing Commission intended to give judges discretion to grant a one-level reduction. Hernandez-Limon cites United States v. Valencia, 957 F.2d 153 (5th Cir.1992), for the proposition that "to allow the district court to award a one-level reduction permits [it] to straddle the fence in close cases, without explicitly finding whether the defendant did or did not accept responsibility." Id. at 156.
 
 
 54
 The Valencia court remanded for an explicit determination of whether defendant had accepted responsibility. A similar remand is proper here, as the district court did not make any clear finding, and was content simply to give Hernandez-Limon "the benefit of the doubt." Moreover, if on remand Hernandez-Limon chooses to plead guilty, a redetermination of her acceptance of responsibility would be appropriate in any case.
 
 CONCLUSION
 
 55
 We vacate the convictions, reverse the district court's refusal to accept Hernandez-Limon's guilty plea, and remand with instructions that she be allowed, if she chooses, to enter a guilty plea. The government must offer her the same terms offered in her previous plea agreement, or must show a legitimate, nonvindictive reason for not doing so. Should she choose to follow this course, resentencing will be required.
 
 
 56
 If Hernandez-Limon decides not to plead guilty, her convictions shall be reinstated; however, we reverse the district court's one-level reduction for acceptance of responsibility, and remand for resentencing.
 
 
 57
 AFFIRMED in part, REVERSED in part, VACATED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 He said, "Well, I looked inside the car and I didn't think of the consequences." Transcript of Gonzales' Plea Colloquy, August 20, 1992, at 15. He also said he had not been offered any money to drive the car
 
 
 [2]
 In her letter of "acceptance of responsibility," she says Gonzales was a "friend for several years and even on an occasion we dated."
 
 
 [3]
 Intent to distribute can be inferred from the possession of more than a personal use amount of a drug. 81 pounds of marijuana, needless to say, is more than a personal use amount
 
 
 [4]
 This would also be the case if "corrupt" were defined as "with the purpose of obstructing justice," as the parties both suggest. Blue Br at 21; Red Br at 29-30; see United States v. Rascheed, 663 F.2d 843, 852 (9th Cir.), cert. denied, 454 U.S. 1157 (1982); 62 ALR Fed. 303