### UNITED STATES of America, Plaintiff–Appellee,

### v.

### Edward CARRANZA, Defendant–Appellant.

### No. 00–50607.

United States Court of Appeals, Ninth Circuit.

Argued Nov. 9, 2001.

Submitted April 10, 2002.

Filed May 3, 2002.

Matthew C. Winter, Federal Defenders of San Diego, Inc., San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney, Bruce R. Castetter, Assistant United States Attorney, San Diego, CA, for the plaintiff-appellee.

Before: GOODWIN, WALLACE and THOMAS, Circuit Judges.

## OPINION

GOODWIN, Circuit Judge.

Edward Carranza appeals his conviction for possession of marijuana with intent to distribute and importation of marijuana. He claims that the evidence was not sufficient to convict him of these charges. Carranza also assigns error to the denial of his motion to suppress his post-arrest statement; he argues that this statement was the fruit of an illegal arrest, because the arrest was not supported by probable cause. Finally, Carranza claims that the district court incorrectly instructed the jury with respect to the mens rea requirement, and sentenced him under unconstitutional statutes. We affirm.

### FACTUAL BACKGROUND

Edward Carranza ("Carranza") was the sole passenger of a pickup truck being driven by Elias Muro–Robles ("Muro–Robles") across the border from Mexico into the United States. Customs inspectors at the Tecate Port of Entry stopped the vehi-

cle. At the primary inspection point, Muro–Robles declared that he was a United States citizen and that he had driven down from Stockton, California to Tecate, Mexico to visit his girlfriend. Muro–Robles stated that he and Carranza were going to San Diego to pick up somebody. The primary customs inspector sent Muro–Robles and Carranza to the secondary inspection area for further investigation.

Customs Inspector Laura Wilson was working in the secondary inspection area when Muro–Robles drove the truck into her area. Muro–Robles explained to Inspector Wilson that, although he had told the primary inspector that he was a United States citizen, he was really a resident alien and had forgotten his I–155 card in Stockton. Inspector Wilson decided to refer Muro–Robles and Carranza to an immigration inspector. She escorted them to the Immigration Office.

While Carranza and Muro–Robles were in the Immigration Office, Inspector Wilson returned to the truck. During her conversation with Carranza and Muro–Robles, she had detected a strong odor of gasoline emanating from the vehicle. Inspector Wilson had often seen gas tanks being used to smuggle contraband. The odor of gasoline coming from the truck prompted her to request that a drug detector be brought to the truck. The dog alerted to the truck for the presence of drugs.

Inspector Wilson used a fiberscope—a device containing a small camera—to look inside the gas tank. She noticed welds and what appeared to be a metal box inside the gas tank. Inspector Wilson then had Muro–Robles and Carranza patted down for weapons. No weapons were found. Muro–Robles and Carranza waited inside the lobby of the secondary inspection office of the Tecate Port of Entry while a search of the gas tank was conducted.

After the gas tank was removed from the truck, the inspector found two metal containers inside the tank. She opened the containers and found six packages of green leafy material. A chemical test of the material was positive for marijuana. The marijuana weighed 92.6 pounds.

After the discovery and weighing of the marijuana, Inspector Wilson contacted Customs Special Agent John Wilmarth ("Agent Wilmarth"). Agent Wilmarth was at the San Ysidro Port of Entry when he received Inspector Wilson's telephone call around 9:30 p.m. He drove to Tecate, reviewed the evidence with Inspector Wilson, and then took over the investigation. He decided to interview Muro–Robles first.

Muro–Robles stated that he was to be paid $2,500 for driving the truck containing drugs into the United States from Mexico. He claimed not to know what type of drug was hidden in the truck or where in the vehicle it was hidden. He said that he was to deliver the drugs to Stockton, California. He stated that this was the third time he had smuggled drugs into the United States from Mexico. Muro–Robles told Agent Wilmarth that Carranza was aware that the truck contained drugs but was not to be paid for his role in the operation. Muro–Robles claimed that Carranza intended later to smuggle drugs for the same organization, and that this trip was a test run for Carranza.

After interviewing Muro–Robles, Agent Wilmarth transported Muro–Robles and Carranza to the San Ysidro Port of Entry, because the Tecate Port of Entry was closing for the night. Once at San Ysidro, Agent Wilmarth interviewed Carranza. He advised Carranza of his Miranda rights and Carranza said that he understood his

rights. Carranza waived his Miranda rights in writing. No threats or promises were made to Carranza. He was not handcuffed.

Carranza said that he had been recruited by Muro–Robles to run loads of narcotics from Mexico to the United States. Carranza stated that he had driven a pickup truck—similar to the one in which the marijuana was found—from Stockton to San Diego earlier that same day. He had met Muro–Robles at the San Diego airport and the two men had then driven to what Carranza believed was Tecate, Mexico. Muro–Robles had left Carranza at a house that Carranza believed belonged to Muro–Robles' aunt. Muro–Robles had then driven alone (in the vehicle that Carranza had driven to San Diego) to another location and had exchanged that vehicle for a truck that was already loaded with marijuana. Muro–Robles had then returned to pick up Carranza and they drove together to the Tecate Port of Entry, where they were stopped.

Carranza admitted that he knew that the truck contained illegal drugs, but claimed that he did not know the type of drugs or the location in which the drugs were hidden. Carranza said that this trip was the first time he was involved in drug smuggling and that this trip was a test run for him, meaning that if he and Muro–Robles accomplished their mission of getting the drugs through the border to Stockton, then Carranza would begin driving loads for the same smuggling organization. Carranza said that he did not expect to be paid for making the test run.

## PROCEDURAL HISTORY

The indictment charged Carranza with importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960; and possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). For both counts, the indictment charged Carranza with aiding and abetting, in violation of 18 U.S.C. § 2.

Pretrial, Carranza moved to suppress his post-arrest statements, on the grounds that he had been arrested without probable cause, and to dismiss the indictment, asserting that the drug laws were unconstitutional. The court denied both motions.

At the close of the evidence at trial, Carranza made a Rule 29 motion for a judgment of acquittal, based on the following three grounds: (1) the evidence was not sufficient to find Carranza guilty of any crime; (2) Carranza could not be guilty of importation, because he did not proceed beyond the inspection station into the United States; and (3) there was no evidence that Carranza knew the amount or type of the controlled substance, which Carranza believes is required under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The district court denied Carranza's motion.

At the jury instruction conference, Carranza submitted proposed instructions which would have told the jury that the government needed to prove that Carranza had knowledge of the type and quantity of controlled substance. The district court refused to give Carranza's proposed instructions. The court instructed that the government had to prove that Carranza knew that the truck contained a controlled substance, not that Carranza knew the type and quantity of the controlled substance.

The jury found Carranza guilty of importation of marijuana and possession of marijuana with intent to distribute. The district court sentenced Carranza to three years of probation.

## DISCUSSION

### A. The existence of probable cause to arrest Carranza and the admissibility of his post-arrest confession

Carranza's principal point on appeal is that his warrantless arrest was made without probable cause; therefore, his post-arrest confession should have been suppressed as the fruit of an illegal arrest. Carranza argues that his "mere presence" as a passenger in the truck carrying drugs across the border is not enough to establish particularized probable cause that he was involved in the drug smuggling operation. He relies on *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), which held that a person's "mere propinquity" to criminal activity alone does not support probable cause to search or arrest him.

The district court did not specifically determine the time at which Carranza was arrested, but did find that there was probable cause to arrest Carranza as soon as the marijuana was discovered. After the discovery, Carranza was placed in a security office to await the arrival of the investigating customs agent; this is the earliest point at which Carranza could have been considered to be under arrest.

The standard for determining when Carranza was arrested is when "a reasonable person would have believed that [Carranza] was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Although Carranza was not free to leave while the truck was being detained at the customs check point, he was not yet "under arrest" because the government may legitimately detain persons entering the country at a customs inspection station. "The government has more latitude to detain people in a border-crossing context, but such detentions are acceptable only during the time of extended border searches." *United States v. Juvenile (RRA–A)*, 229 F.3d 737, 743 (9th Cir.2000) (citations omitted). Accordingly, the earliest point at which Carranza could have been considered to be "under arrest" was after the search of the truck was complete. By that time, the government had discovered a commercial quantity of marijuana concealed in the gas tank of the truck.

A warrantless arrest must be supported by probable cause. *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir.1990). Whether the government had probable cause to arrest Carranza at the time and place of the arrest is a mixed question of law and fact. *See United States v. Buckner*, 179 F.3d 834, 837 (9th Cir.1999), *cert. denied sub nom. Murry v. United States*, 528 U.S. 1094, 120 S.Ct. 831, 145 L.Ed.2d 699 (2000). The district court's determination of probable cause is reviewed de novo. *Id.*

Probable cause existed if "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [Carranza] had committed a crime." *United States v. Garza*, 980 F.2d 546, 550 (9th Cir.1992) (internal quotation marks and citations omitted).

From the "totality of the circumstances known to the arresting officers," the inspectors knew that (1) Carranza was the sole passenger in a vehicle carrying a commercial quantity of an illegal drug across the border; (2) there was a strong odor of gasoline coming from the vehicle; (3) gas tanks are frequently used to smuggle drugs; and (4) Muro–Robles lied about his immigration status to the primary inspector. These facts support a strong inference that Carranza was involved in a crime.

As the district court noted, the disposition of Carranza's claim is dictated by *Buckner.* In that case, Buckner drove a car from Mexico into the United States with Murry as the sole passenger. Inspection of the car revealed that it contained a commercial quantity of marijuana. After her indictment, Murry moved to suppress her post-arrest statements, arguing that she was arrested without probable cause and that her statements were the fruit of the illegal arrest. The district court granted her motion to suppress, and we reversed, holding that there had been probable cause to arrest Murry. *See Buckner,* 179 F.3d at 838 (citing *United States v. Heiden,* 508 F.2d 898 (9th Cir. 1974), another case involving the arrest of a passenger in a car transporting a large quantity of drugs across the U.S. border).

Like Carranza, Murry argued that her "mere presence" in the car did not support a finding of probable cause to arrest her, and attempted to support her argument by citing *Ybarra,* and *United States v. Soyland,* 3 F.3d 1312 (9th Cir.1993). The *Buckner* court read *Ybarra* and *Soyland* as simply demonstrating that "the mere presence doctrine has logical application where the facts and circumstances do not support an inference that the individual is connected to the proximate criminal activity." *Buckner,* 179 F.3d at 839. In contrast, in Murry's case,

> the attendant facts and circumstances support a fair probability that Murry was linked to the crime of drug trafficking. Murry was the passenger in a car loaded with a commercial quantity of marijuana, the car belonged to neither occupant, and the car was procured under suspicious circumstances. Given these facts, a prudent and experienced police officer might reasonably suspect

> that the passenger is involved in drug smuggling.

*Id.*

Similarly, in Carranza's case, the customs agents who arrested Carranza had enough evidence reasonably to suspect that Carranza was involved in drug smuggling. Carranza was the passenger in a truck containing a commercial quantity of marijuana, Muro–Robles had lied about his citizenship status to the first inspector, and there had been a strong odor of gasoline coming from the vehicle, suggesting recent tampering with the fuel tank. As *Heiden* makes clear, a passenger's presence in a vehicle carrying a commercial quantity of drugs across the border is enough to find probable cause, even though such evidence without more is not enough to sustain a guilty verdict. *Heiden,* 508 F.2d at 901. We agree with the district court that probable cause existed for Carranza's arrest. Because Carranza's arrest was based on probable cause and he was fully advised of his Miranda rights before he was questioned, his post-arrest statements were not the fruit of an illegal arrest.

*B. Sufficiency of the evidence to convict Carranza under a theory of aiding and abetting*

When, as in this case, a claim of sufficiency of the evidence is preserved by making a motion for acquittal at the close of the evidence, this court reviews the district court's denial of the motion de novo. *See United States v. Munoz,* 233 F.3d 1117, 1129 (9th Cir.2000). A challenge to the sufficiency of the evidence requires this court to determine if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ The government prosecuted Carranza under the theory that he had aided and abetted Muro–Robles in the possession and importation of marijuana, and was therefore punishable as a principal. *See* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). For a defendant to be guilty of aiding and abetting, it is necessary that he in some way associate himself with the venture, " 'that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' " *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938) (quoted in *United States v. Sanchez–Mata*, 925 F.2d 1166, 1169 (9th Cir.1991))).

■ In ruling on Carranza's Rule 29 motion, the district court concluded that Carranza had aided and abetted Muro–Robles first by driving to the San Diego airport to pick up Muro–Robles for the sole purpose of helping Muro–Robles bring the drugs across the border, and then by participating in the test run by sitting in the truck as Muro–Robles drove back into the United States. Carranza intended the operation to be carried out successfully, and he had an agreement with Muro–Robles and the other members of the drug-smuggling ring; this agreement included a reward for Carranza if the operation was successful. Carranza said that if this test run went smoothly, Carranza would be rewarded by receiving other drug loads to smuggle. Carranza participated in the operation as something that he wished to bring about, and he sought by his actions to make it succeed. Therefore, the evidence was sufficient to convict Carranza of importation and possession with intent to distribute on a theory of aiding and abetting.

*C. The relationship of immigration law's "entry" requirement to the crime of importation*

■ Carranza argues that the district court improperly denied his motion for a judgment of acquittal because the government never proved that the marijuana in the truck was technically "imported" into the United States as required by 21 U.S.C. §§ 952 and 960 and defined by 21 U.S.C. § 951. We review de novo the district court's construction or interpretation of a statute. *See United States v. Doe*, 136 F.3d 631, 634 (9th Cir.1998).

■ There is no dispute that when the truck in which Carranza was a passenger was driven into the Tecate Port of Entry, Carranza had physically entered the United States. Yet Carranza argues that when the marijuana was seized, he had not yet made a technical "entry" into the United States for purposes of immigration law, and therefore he could not yet have imported marijuana into the United States. An "entry" in immigration law requires the individual to be both physically present in the United States and free from official restraint. *See United States v. Pacheco–Medina*, 212 F.3d 1162, 1164 (9th Cir.2000). Carranza claims that when he was arrested and the marijuana was seized at the secondary inspection point, he had not yet "entered" the United States because he was never free from official restraint. Because he had not "entered" the United States for purposes of immigration law, Carranza argues, he could not have imported the marijuana into the United States. His argument attempts to confuse immigration with importation.

The special meaning of the term "entry" in immigration law has never been applied outside the immigration context. This court has explicitly rejected the notion that this term of art could be applied to illegal transportation. *See Daut v. United States*, 405 F.2d 312, 316 (9th Cir.1968) ("Counsel confuses the use of the word entry in the Immigration laws, and the word entry as it is used in connection with importation of narcotics into the United States.... The word entry is a word of art in the field of Immigration law; all that need be shown in a narcotic importation case is that the defendant came into the United States and imported the narcotics.") The holding in *Daut* applied to the previous importation statute, 21 U.S.C. § 176a, which is no longer in effect. Section 176a used the words "import and bring into the United States." Carranza was convicted under 21 U.S.C. § 952, which uses the word "import," which 21 U.S.C. § 951 defines as "any bringing in or introduction." The difference in language between the old and new importation statutes is immaterial to Carranza's appeal. The immigration term "entry" does not apply to the interpretation of "importation" in drug smuggling laws. Accordingly, Carranza's argument is without merit.

### D. Constitutionality of the sentencing statutes after Apprendi

 Carranza challenges the constitutionality of 21 U.S.C. §§ 841(b) and 960(b), the statutes under which he was sentenced. The constitutionality of a statute is a question of law reviewed de novo. *See United States v. Jones*, 231 F.3d 508, 513 (9th Cir.2000). We hold that the statutes under which Carranza was sentenced are constitutional on their face and as applied in this case.

 A recent Ninth Circuit en banc decision explicitly held 21 U.S.C. § 841 to be facially constitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *United States v. Buckland*, 277 F.3d 1173, 1187 (9th Cir.2002) (en banc). By extension of the reasoning in *Buckland*, this Court held that 21 U.S.C. § 960 is also facially constitutional under *Apprendi*. *United States v. Mendoza–Paz*, 286 F.3d 1104, 1109–10 (9th Cir.2002).

 Carranza's as-applied challenge to the constitutionality of sections 841 and 960 also fails. As in *Mendoza–Paz*, Carranza was never exposed to a sentence beyond the prescribed statutory maximum. *Id.* at 1110–11. The court in *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Carranza was never exposed to a sentence greater than 60 months' imprisonment, the maximum to which he constitutionally may be exposed under sections 960(b)(4) and 841(b)(1)(D). Because the district court in Carranza's case did not exceed the maximum sentence permitted by the statutes for an unspecified amount of marijuana, *Apprendi* is not implicated.

### E. Mens rea as to type and quantity of the controlled substance

Carranza's final argument is that the district court erred when it instructed the jury that the government did not have to prove that Carranza knew that the substance was marijuana or that Carranza knew the amount of the substance.

 "Whether a jury instruction misstates elements of a statutory crime is a question of law [and] reviewed de novo." *United States v. Romo–Romo*, 246 F.3d 1272, 1274 (9th Cir.2001), (citing *United*

*States v. Johnson,* 956 F.2d 197, 199 (9th Cir.1992)) (internal quotation marks omitted).

 A defendant charged with importing or possessing a drug is not required to know the type and amount of drug. "[A] defendant can be convicted under § 841 and § 960 if he believes he has *some* controlled substance in his possession." *United States v. Ramirez–Ramirez,* 875 F.2d 772, 774 (9th Cir.1989). "The base offense level for guideline sentencing may be determined by the volume of the drug actually imported, whether or not the defendant knows either the volume or the nature of the substance—if he knows only that he is importing a controlled substance." *United States v. Salazar,* 5 F.3d 445, 446 (9th Cir.1993). *Apprendi* did not change the long established rule that the government need not prove that the defendant knew the *type* and *amount* of a controlled substance that he imported or possessed; the government need only show that the defendant knew that he imported or possessed *some* controlled substance. *Id.*

In Carranza's case, the district court correctly instructed the jury with respect to the *mens rea* requirement, and Carranza's assignment of instructional error is without merit.

AFFIRMED.