W. FLETCHER, Circuit Judge,
concurring:
I concur in Judge Wardlaw’s careful opinion, which faithfully applies our circuit’s law regarding the mens rea required to sentence a defendant convicted of illegally importing drugs. But I do so only because we are bound by United States v. Carranza, 289 F.3d 634 (9th Cir.2002). Under the rule of Carranza and its predecessors, a defendant who reasonably believes that he is importing a relatively small quantity of marijuana into the country must be sentenced to the ten-year mandatory minimum prison term that applies to a defendant who knowingly imports the same quantity of methamphetamine. I do not believe that Congress intended this result. I write to explain why, in my view, Carranza should be overruled.
I
Jefferson was convicted of violating 21 U.S.C. §§ 952 and 960, which together criminalize the importation of narcotic drugs into the United States. Section 960, under which Jefferson’s penalty was determined, is an omnibus narcotics statute that prescribes penalties for a variety of trafficking crimes. Section 960(a) sets out “[ujnlawful acts.” 21 U.S.C. § 960(a). As relevant here, it provides that “[a]ny person who ... knowingly or intentionally imports ... a controlled substance ... shall be punished as provided in subsection (b) of this section.” Id. (citing id. § 952).
Section 960(b) sets out separate and increasingly severe penalties corresponding to different types and quantities of drugs. Defendants who import up to 50 kilograms of marijuana, for example, are not subject to a mandatory minimum sentence; instead, they face a maximum prison sentence of five years. Id. § 960(b)(4) (citing id. § 841(b)(1)(D)). By contrast, defendants who import as little as 500 grams of cocaine are subject to a five-year mandatory minimum sentence. Id. § 960(b)(2)(B). *1020 Defendants who import as little as 50 grams of methamphetamine are subject to a ten-year mandatory minimum sentence. Id. § 960(b)(1)(H).
These escalating penalties, which depend on the particular drug a defendant imported, were established by the Anti-Drug Abuse Act of 1986, Pub.L. No. 99-570, 100 Stat. 3207. See U.S. Sentencing Comm’n, Special Report to Congress: Cocaine and Federal Sentencing Policy 116 (1995). Under the Act, a defendant who manufactures, distributes, or imports certain quantities of dangerous illegal drugs faces significantly more severe sentences than a person who traffics in the same quantities of less dangerous drugs. The increasingly severe penalties correspond to the culpability of the defendant, as well as the danger to the public posed by the importation of the particular drugs.
The question presented in this appeal is whether a defendant who reasonably believed he was illegally importing several kilograms of marijuana, but in fact illegally imported several kilograms of methamphetamine, must be sentenced to the ten-year minimum term that corresponds to methamphetamine. As Judge Wardlaw’s opinion explains, we have confronted this question on several occasions. See, e.g., Carranza, 289 F.3d 634; United States v. Salazar, 5 F.3d 445 (9th Cir.1993); United States v. Ramirez-Ramirez, 875 F.2d 772 (9th Cir.1989); United States v. Lopez-Martinez, 725 F.2d 471 (9th Cir.1984). Each time, we have concluded that “the government need not prove that the defendant knew the type and amount of a controlled substance that he imported or possessed; the government need only show that the defendant knew that he imported or possessed some controlled substance.” Carranza, 289 F.3d at 644 (emphasis in original); see also Op. at —.
The Carranza rule has devastating consequences for a defendant who reasonably believes that he is carrying a controlled substance but is mistaken about what that substance is. This case makes those consequences clear. The government does not dispute Jefferson’s claim that he believed he was importing marijuana into the United States. If Jefferson had in fact been carrying only the four kilograms of marijuana that he believed he was carrying, he would have faced a maximum sentence of five years, with no mandatory minimum. Under Carranza, however, he must be sentenced to a minimum of ten years in prison because he was, in fact, carrying methamphetamine.
II
If I were writing on a clean slate, I would hold that Jefferson, who reasonably believed he was importing marijuana, may not be punished by the mandatory minimum that attaches to the importation of methamphetamine. I reach this conclusion for three reasons.
First, it is a cardinal rule of the interpretation of criminal statutes that “the existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.” United States v. U.S. Gypsum Co., 438 U.S. 422, 436, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (alteration and internal quotation marks omitted). That is, we generally interpret criminal statutes to require the government to prove beyond a reasonable doubt that “the defendant kn[e]w the facts that ma[d]e his conduct illegal.” Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). Absent this background rule, the terms of many federal statutes “would sweep out ..., except when expressly preserved, the ancient requirement of a culpable state of mind” — a result “inconsistent with our philosophy of criminal law.” Morissette v. United States, 342 U.S. 246, 250, 72 S.Ct. 240, 96 *1021 L.Ed. 288 (1952). Subjecting a defendant to a decade in prison based on a fact that he did not know — indeed, in this case, a fact that Jefferson reasonably believed not to be true — is inconsistent with “fundamental and far-reaching” principles of criminal liability. Id. at 247, 72 S.Ct. 240.
Second, I find nothing in the Anti-Drug Abuse Act that overcomes the presumption of a mens rea. See Staples, 511 U.S. at 605-06, 114 S.Ct. 1798. An important purpose of the escalating mandatory minimums established by the Act, as noted above, is to approximate the culpability of the defendant and the dangerousness of his act. Whether or not these mandatory mínimums are reliable approximations, see Kimbrough v. United States, 552 U.S. 85, 97-99, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (canvassing criticisms of the sentencing disparity between crack and powder cocaine), they reflect the basic insight that someone who imports a kilogram of methamphetamine is more culpable than someone who imports a kilogram of marijuana.
The Supreme Court has recognized an exception to the presumption of a mens red for so-called “public welfare” offenses. See Staples, 511 U.S. at 606-07, 114 S.Ct. 1793; U.S. Gypsum Co., 438 U.S. at 437-38, 98 S.Ct. 2864; cf. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922). This exception originated in Balint, which considered whether a predecessor to the Anti-Drug Abuse Act, the Narcotic Act of 1914, required the government to prove only that a defendant knew that the items he sold were “narcotics” criminalized by the statute. See id. at 254, 42 S.Ct. 301. But the sentencing scheme established by the Anti-Drug Abuse Act looks nothing like the scheme considered in Balint. Under the 1914 Act, a convicted defendant faced only the imposition of a discretionary fine or a short term in prison. See Pub.L. No. 63-223, ch. 1, § 9, 38 Stat. 785, 789 (1914). The purpose of the “criminal penalty,” as the Court explained, was simply “to secure recorded evidence” of transactions in narcotics, and thereby to promote compliance. Balint, 258 U.S. at 254, 42 S.Ct. 301; see also Staples, 511 U.S. at 616, 114 S.Ct. 1793 (noting that public welfare offenses, as a historical matter, “almost uniformly ... provided for only light penalties such as fines or short jail sentences”).
By contrast, the Anti-Drug Abuse Act sets up a sentencing scheme that — at least as applied absent a mens rea requirement — is indiscriminately punitive in nature. It is considerably more punitive than the statutes considered in Staples, U.S. Gypsum, and Morissette. As Judge Kavanaugh has pointed out:
The “harsh penalties” in Staples and [United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) ] were statutory máximums of 10 years’ imprisonment. The “sever[e]” sanction in U.S. Gypsum was a statutory maximum of 3 years’ imprisonment. And the “high” penalty in Morissette was a statutory maximum of one year in prison. The Supreme Court deemed those penalties sufficiently stringent to support a requirement of mens rea.
United States v. Burwell, 690 F.3d 500, 548 (D.C.Cir.2012) (en banc) (Kavanaugh, J., dissenting) (citations omitted). The penalties considered in these cases were “harsh.” The mandatory minimum sentences imposed under § 960(b) are even more so. Anyone convinced that he is importing marijuana but convicted of importing methamphetamine faces a mandatory minimum of ten years. The presumption of a mens rea is designed to avoid precisely this injustice.
Third, my conclusion is underscored by the Supreme Court’s increasing attention *1022 to the Sixth Amendment consequences of statutory sentencing schemes. See Alleyne v. United States, — U.S. -, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013); Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), overruled by Alleyne, 133 S.Ct. at 2155; Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Although I agree with Judge Wardlaw that Alleyne, the most recent in this line of cases, is not “clearly irreconcilable” with Carranza, see Miller v. Gammie, 335 F.3d 889, 893 (9th Cir.2003) (en banc), Alleyne reflects a broader concern with the unfairness of sentencing schemes in which the facts that are “ ‘legally essential to the punishment to be inflicted’ ” need not be found beyond a reasonable doubt. See Alleyne, 133 S.Ct. at 2160 (quoting 1 Joel Prentiss Bishop, Criminal Procedure 51 (2d ed. 1872)).
Alleyne held that any “facts that increase mandatory minimum sentences must be submitted to the jury.” Id. at 2163. The government agrees that in a case brought under 21 U.S.C. § 960, such facts include the type and quantity of drug. After Alleyne, “the core crime and the fact triggering the mandatory minimum sentence” — here, the drug type and quantity — “together constitute a new, aggravated crime, each element of which must be submitted to the jury.” Id. at 2161. There is no reason, in light of Alleyne, why it should be enough for the government to prove that a defendant knew that he was carrying a controlled substance, irrespective of what that substance was, in order to subject him to the mandatory minimum sentences set out at § 960(b). If the government must prove that Jefferson “knowingly” imported four kilograms of methamphetamine into the United States — that is, if both the fact of importation and the type of drug are “elements” of the crime — it should be required to prove not only that Jefferson knew he was importing an illegal drug, but also that he knew what that drug was.
III
The Supreme Court’s recent decision in McFadden v. United States, — U.S. -, 135 S.Ct. 2298, 192 L.Ed.2d 260 (2015), does not change my reading of the statute in the case now before us. In McFadden, the Supreme Court considered the mens rea required to convict a defendant of violating the Controlled Substance Analogue Enforcement Act of 1986 (“Analogue Act”). See 21 U.S.C. §§ 802(32)(A), 813. The Court held that in order to convict a defendant of violating the Analogue Act, the government must prove that the defendant knew “that the substance he is dealing with is some unspecified substance listed on the federal drug schedules.” 135 S.Ct. at 2304.. It further held that, when trying to convict a defendant of violating the narcotics statutes using an analogue, the government must show that he “knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue.” Id. at 2305.
But the Court did not address whether a defendant could be subject to the mandatory mínimums set out at § 960(b)(1) and (2) if all the defendant knew was that he had dealt with “some unspecified substance listed on the federal drug schedules ... regardless of whether he knew the particular identity of the substance.” Id. at 2304-05. A defendant convicted of violating the Analogue Act is not subject to the mandatory mínimums set out at § 960(b)(1) and (2); he is instead subject only to the maximum sentence set out at § 960(b)(3) that applies to all defendants whose crime “involve[s] a controlled substance in schedule I.” See 21 U.S.C. § 960(b)(3); see also id. § 813 (“A controlled substance analogue shall ... be treated ... as a controlled substance in schedule I.”). Thus the *1023 Court had no reason in McFadden to consider whether the government must prove that a defendant knew “the particular identity” of the controlled substance he dealt with in order to subject him to the escalating mandatory mínimums set out in the Anti-Drug Abuse Act for particular illegal drugs. For the reasons above, I would hold that the government must prove such knowledge.
I have no quarrel with the proposition that the government can prove a violation of § 960(a) by proving only that a defendant knew he violated the narcotics laws by importing “some unspecified substance listed on the federal drug schedules.” McFadden, 135 S.Ct. at 2304. But I do not believe the government can subject that defendant to the escalating mandatory mínimums set out at § 960(b)(1) and (2) without proving that he knew which illegal drug he was importing. Our longstanding presumption of a mens rea requirement, the history and purpose of the Anti-Drug Abuse Act, and the lessons of Alleyne and Apprendi teach us otherwise.
rv
Imposing ten years of mandatory imprisonment on this defendant is fundamentally “inconsistent with our philosophy of criminal law.” Morissette, 342 U.S. at 250, 72 S.Ct. 240. While I join Judge Wardlaw’s careful opinion, I do so only because we are bound by Carranza. The government does not dispute that Jefferson reasonably believed that he was illegally importing marijuana. In the absence of Carranza, I would hold that Jefferson is not subject to the ten-year mandatory minimum applicable to the illegal importation of methamphetamine.