**NOT FOR PUBLICATION**

**FILED**

FEB 23 2023

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   22-30028 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 1:20-cr-00131-SPW-1 |
| ANTOINE ROBERT THREEFINGERS, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Submitted February 10, 2023[**]
Portland, Oregon

Before:  MURGUIA, Chief Judge, and FORREST and SUNG, Circuit Judges.

Antoine Robert Threefingers appeals from his jury conviction for one count

of assault on a federal officer, in violation of 18 U.S.C. §§ 111(a)(1) and 111(b);

one count of assault with a dangerous weapon, in violation of 18 U.S.C.

§§ 113(a)(3) and 1153(a); one count of possession of a firearm in furtherance of a

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); and one count of prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Threefingers argues that there was insufficient evidence before the jury to establish that he was sane at the time of the charged offenses. So in Threefingers's view, the district court erred when it denied his Federal Rule of Criminal Procedure 29 motion for judgment of acquittal. Threefingers also appeals the discretionary portion of his custodial sentence—88 of the 208 months—as substantively unreasonable. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

1.      We review de novo a district court's denial of a Rule 29 motion. *United States v. Carranza*, 289 F.3d 634, 641 (9th Cir. 2002). On such a motion, we "view[] the evidence in the light most favorable to the prosecution" and ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any . . . conflicts [in the evidence] in favor of the prosecution and must defer to that resolution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (quoting *Jackson*, 443 U.S. at 326).

Threefingers's defense of insanity required that he establish by clear and convincing evidence that (1) "as a result of a severe mental disease or defect," he (2) "was unable to appreciate the nature and quality or the wrongfulness of his

acts." 18 U.S.C. § 17. To meet the clear-and-convincing standard, Threefingers had to "present sufficient evidence to produce in the ultimate factfinder an abiding conviction that the truth of its factual contentions [was] highly probable." *Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004) (cleaned up).

The parties agreed at trial that Threefingers suffered from post-traumatic stress disorder (PTSD) when he engaged in a shootout with federal law enforcement. So the only question that remained for the district court on the Rule 29 motion was whether, viewing the evidence in the light most favorable to the prosecution, Threefingers had proved by clear and convincing evidence that his PTSD made him "unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a).

At trial, Threefingers exercised his right to testify. He addressed his military experience and resultant PTSD, as well as his intent to commit suicide on the day of the shootout. He described that, although he knew he was being pursued by police officers, he experienced a dissociative incident during the firefight that turned the officers at whom he was shooting into "five targets" or "five shadows." He testified that, during the shootout, he "was in a fight for [his] life," a fight for "survival."

The parties presented testimony of opposing expert psychologists. Threefingers relied on Dr. Suzanne Best, a clinical psychologist who specializes in

3

post-traumatic-stress disorder ("PTSD") in combat veterans. Dr. Best interviewed Threefingers over Zoom for three-and-a-half hours in June 2021, about eight months after the gunfight. Threefingers told Dr. Best that during the shootout, he experienced a "glitch" that transformed the officers into "five shadows" from his nightmares that have "haunted" him "since he . . . returned from Iraq," and that they were "trying to kill him." Threefingers believed that the shadows were "the souls of five of the people . . . he killed in combat in Iraq." Dr. Best testified that Threefingers suffers from depression, suicidal ideation, and severe chronic PTSD with dissociative symptoms, including derealization, which is a "sense that [his] surroundings are not real," and reexperiencing, which are "intrusive images" and thoughts that trigger emotional or physical reactions. Based on his description of events, Dr. Best concluded that Threefingers dissociated during the gunfight.

Dr. Cynthia Low, a forensic psychologist who performed Threefingers's competency and insanity evaluations before trial, testified as the government's rebuttal expert. Dr. Low interviewed Threefingers in person on six occasions in February and March of 2021, totaling about ten-and-a-half hours. After testing Threefingers, Dr. Low concluded that he suffered from PTSD. Although Threefingers told Dr. Low that he sought to commit suicide-by-cop, Dr. Low found that his actions during the firefight—actively taking cover when he had several opportunities to be shot—and his trial testimony were inconsistent with that

4

assertion. Threefingers first identified the officers as officers, but then he told Dr. Low that, during the shootout, the officers became "the enemy," as if he was back in Iraq. But Dr. Low found it "questionable" and "strange" that "once the shooting beg[an], suddenly [Threefingers had] no awareness of who he's engaging with," when he was "very aware" that he had been pursued by police officers. And, when discussing the incident with Dr. Low, Threefingers never referred to a "glitch" or the officers as having transformed into the "five shadows" from his nightmares, as he had with Dr. Best. Dr. Low concluded that it was highly improbable that Threefingers was in a dissociative state during the gunfight.

All this evidence was presented to the jury, and it was similarly before the district court when it denied Threefingers's Rule 29 motion. Because we "must presume . . . that the trier of fact resolved any" conflicts in the evidence and inferences "in favor of the prosecution and must defer to that resolution," *Nevils*, 598 F.3d at 1164, we find that the jury credited Dr. Low over Dr. Best and defer to that finding. Threefingers's argument rests almost entirely on Dr. Best's testimony, and he does not contend with Dr. Low's testimony to the contrary, so he cannot show by clear and convincing evidence that his PTSD precluded him from appreciating the wrongfulness of his actions.

Accordingly, we will not disturb the district court's refusal to override the jury's verdict.

5

2.     We review a sentence's substantive reasonableness for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Cruz-Mendez*, 811 F.3d 1172, 1175 (9th Cir. 2016). Appellate review for substantive reasonableness should not simply be a "rubber stamp," but we "will provide relief only in rare cases." *United States v. Ressam*, 679 F.3d 1069, 1087–88 (9th Cir. 2012). "The abuse of discretion standard is deferential, but it does not mean anything goes." *Id.* at 1087. A district court must make its sentencing decision by first calculating the guideline range under the United States Sentencing Guidelines, but the court "may not presume that the Guidelines range is reasonable." *Gall*, 552 U.S. at 49–50. Then the district court must consider all the 18 U.S.C. § 3553(a) factors and apply them to the case in an individualized manner. *Id.*

Threefingers challenges his non-mandatory 88-month sentence for three counts: assault on a federal officer, assault with a dangerous weapon, and prohibited person in possession of a firearm. The guideline range for these offenses, given Threefingers's criminal history, was 77 to 96 months, and Threefingers does not challenge the calculation. Rather, he argues that the district court abused its discretion because the sentencing hearing was "one-sided," and the district court failed to consider his mitigation evidence regarding his PTSD, dissociation, and military service.

The district court carefully considered the sentencing factors and both aggravating and mitigating evidence, and it recognized that a sentence within the guideline range was appropriate in this case, as it was "sufficient but not greater than necessary." *See United States v. Carty*, 520 F.3d 984, 991–92 (9th Cir. 2008). Specifically, the district court recognized that, as a veteran, Threefingers suffered from "mental health issues, particularly . . . PTSD," but found that military service and PTSD did not excuse "firing on law enforcement." And the district court found that Threefingers's criminal history and his past failures to abide by conditions of release, as well as the people in the community that his offenses endangered, justified a within-guidelines sentence.

Threefingers's sentence was therefore substantively reasonable, and the district court did not abuse its discretion.

***

**AFFIRMED.**